In re Randy Lee PILGRIM, Debtor.

Kenneth C. MEEKER, United States Trustee, Movant/Appellant,

v.

Randy Lee PILGRIM, Debtor/Appellee.

No. 91–1228.

United States District Court, C.D. Illinois, Peoria Division.

Jan. 6, 1992.

D. Phillip Anderson, Peoria, Ill., for U.S. Trustee.

Dick L. Williams, East Peoria, Ill., for debtor.

Charles E. Covey, Peoria, Ill., Bankruptcy Trustee.

## ORDER

MIHM, Chief Judge.

Before the court is an appeal by the United States Trustee ("Trustee") from a Bankruptcy Court Order entered February 12, 1991 which denied the Trustee's Motion to Dismiss. Pursuant to 28 U.S.C. § 158, the United States District Court for the Central District of Illinois has jurisdiction to hear this appeal. For the reasons set forth below, this court vacates and remands the decision of the bankruptcy court for further consideration.

## BACKGROUND

The Trustee filed a motion to dismiss debtor's voluntary Chapter 7 petition pursuant to 11 U.S.C. § 707(b). Following a hearing on February 4, 1991, the Honorable William V. Altenberger issued his written opinion and order on February 21, 1991, denying the Trustee's Motion to Dismiss. The Trustee's request for leave to appeal was denied. Thereafter, an Order of Discharge was entered on May 28, 1991, and the Trustee timely filed a Notice of Appeal on June 3, 1991.

This case contains no disputed facts. Plaintiff Randy Lee Pilgrim ("Pilgrim") sought to discharge just under $9,500 in debt at a time when his net take-home pay exceeded his stated expenses by $541.42 per month. He admitted that he could pay 100% of his unsecured debts, without interest, in less than 18 months.

The Bankruptcy Court's opinion was published as *In re Hammer*, 124 B.R. 287 (Bankr.C.D.Ill.1991). A majority of courts have found facts similar to the stipulated facts in this case to be "substantial abuse" under § 707(b), either solely on the basis of the plaintiff's ability to pay or because there were no mitigating circumstances to justify the Chapter 7 petition despite the plaintiff's ability to pay. However, Judge Altenberger disagreed with this application of § 707(b) and stated that "§ 707(b) has only a very limited application, if any at all." 124 B.R. at 290. While recognizing that the majority of courts have applied § 707(b) differently, Judge Altenberger chose to apply § 707(b) under a narrow paradigm articulated by the court in *In re Keniston*, 85 B.R. 202 (Bankr.D.N.H.1988). 124 B.R. at 289. In *In re Keniston*, 85 B.R. 202 (Bankr.D.N.H.1988), the court held:

Section 707(b), as interpreted under a narrow paradigm, would permit a court to dismiss a Chapter 7 case where an

individual debtor's conduct in incurring the debts that she seeks to have discharge was of a nature sufficient, in the words of one court interpreting this section, "to shock the conscience of the court." The question of whether a case should be dismissed under § 707(b) ought to be decided on a case-by-case analysis.... Section 707(b) is intended to cover those very few cases in which the debtor's conduct does not fit square within any of the explicit standards for dismissal or nondischargeability set out in Chapter 7, but in which the debtor's conduct is of such a nature that recourse to the provisions of Chapter 7 ... would contravene the most fundamental notions of fairness and the purposes of Chapter 7.

*In re Keniston,* 85 B.R. at 222. Using the *Keniston* standard, Judge Altenberger found "nothing in the facts of this case which shocks the conscience of this court in the context of contravening the fundamental notions of fairness and the provisions of Chapter 7." 124 B.R. at 289. Judge Altenberger addressed the debtor's ability to repay his unsecured creditors by stating that that fact alone did not justify application of § 707(b). "The legislative history to § 707(b) indicates that Congress did not contemplate the ability of a debtor to repay his debts in whole or in part as constituting adequate cause for dismissal. H.Rep. No. 95–595, 95th Cong., 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 50787, 6336." Therefore, under the *Keniston* test, Judge Altenberger found that Pilgrim's petition did not constitute substantial abuse under § 707(b) and denied the Trustee's Motion to Dismiss.

## ARGUMENT

The Trustee argues that the issue on appeal is whether the bankruptcy court erred as a matter of law in finding that debtor's bankruptcy filing did not constitute a "substantial abuse" as that term is used in 11 U.S.C. § 707(b). Section 707(b) states:

After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The appropriate standard of review for the bankruptcy court's finding of fact that Pilgrim's petition did not constitute "substantial abuse" is whether such a finding is clearly erroneous. *In re Green,* 934 F.2d 568, 570 (4th Cir.1991), citing Bankruptcy Rule 8013. The question of what constitutes "substantial abuse" for the purposes of 11 U.S.C. § 707(b) is a matter of law, to be reviewed *de novo.* 934 F.2d at 570, citing *In re Stenersen Corp.,* 61 B.R. 702, 705 (Bankr.D.Md.1986). This court declines to review the bankruptcy court's findings of fact, but rather reviews, *de novo,* the question of whether the bankruptcy court erred in applying the *Keniston* test for "substantial abuse" to the facts of this case.

### The Legislative History of § 707(b)

The Trustee argues that people who can pay their bills should pay their bills. He alleges that when Congress enacted § 707(b) in 1984, it intended to deny Chapter 7 bankruptcy relief to the non-needy or dishonest debtor. The Trustee contends that Judge Altenberger's reliance upon legislative history from 1977, which discusses the absence of legislative contemplation of the debtor's ability to repay his debts as constituting adequate cause for dismissal, is misplaced and not relevant to the legislative intent behind § 707(b), which did not become law until 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.

Although the term "substantial abuse" is not defined in the Bankruptcy Code, and is not dealt with expressly in the legislative history, the Trustee reviews the events leading up to the enactment of § 707(b) which lend support to his interpretation of this provision. Before final passage in

1984, the proposed amendments contained a "future income threshold test" and a consumer counseling system which were removed from the final version of the bill. These amendments were aimed specifically at debtors who could repay a reasonable portion of their debts. *See* Trustee's brief p. 4. Although these particular proposals failed to carry sufficient support to be included in the final bill, the Trustee reminds the court that the impetus behind these proposals remains relevant. The consumer credit amendments, of which 11 U.S.C. § 707(b) is a part, were the result of congressional concern that credit costs were being driven upward by the easy access and ready availability of Chapter 7 discharge to individuals seeking to rid themselves of debt even though they had an ability to pay. *See* Trustee's brief p. 5. In addition to statements on record from individual congressmen, the Trustee cites the section analysis of the 1983 Senate Committee Report on S. 445, which explains the purpose of the substantial abuse provision:

> This provision represents a balancing of two interests. It preserves the fundamental concept embodied in our bankruptcy laws that debtors who cannot meet debts as they come due should be able to relinquish non-exempt property in exchange for a fresh start. At the same time, however, it upholds creditors' interests in obtaining repayment where such repayment would not be a burden.... However, if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse.

S.Rep. No. 98–65, 98th Cong., 1st Sess. 53–54 (1983).

Pilgrim counters the Trustee's interpretation of "substantial abuse" by stressing that an earlier version of the bill which included a specific "threshold future income test" was removed before § 707(b) became law. Therefore, Congress rejected the notion that ability to pay constituted "substantial abuse." He argues that Congress was unable to agree on what constituted "substantial abuse." *See* Debtor's brief p. 4. In his reply, the Trustee argues that the mere fact that the version of

§ 707(b) enacted did not contain a mechanical "threshold test" is not dispositive that Congress did not intend a debtor's ability to pay to be a factor to consider when assessing whether his petition constitutes "substantial abuse" under § 707(b). On the contrary, the Trustee argues that this very factor, a debtor's ability to pay his debts independent of Chapter 7 relief, was the motivation which prompted the need for drafting § 707(b) in the first place. In the absence of express statutory language or legislative history regarding this provision, the Trustee suggests that Congress rejected a mechanical "threshold test" because it did not want to limit § 707(b) to the "ability to pay" factor, but rather preferred a broader test by which to analyze "substantial abuse" cases. *See* Trustee's Reply p. 2.

■ After reviewing the legislative history of § 707(b) and the policy concerns which prompted it's drafting, this court agrees with the Trustee's assessment of the legislative intent behind § 707(b). This provision was enacted to correct an imbalance in Bankruptcy Code policy which had allowed one side of the equation, a debtor's right to a fresh start, to outweigh the other side of the equation, the presumption, which protects creditors rights, that a debtor will make his best effort to meet his obligation before turning to Chapter 7 relief. Senator Hatch put this in other words on the Senate floor: "another important provision in title III [which] prevents abuse of the code.... As I mentioned earlier, title III contains more than 30 amendments to ensure that a 'fresh start' does not become a 'head start'." (130 Cong.Rec.S. 8891) (June 29, 1984) as cited in *In re Keniston*, 85 B.R. at 219. Given this observation, the Court agrees that Congress intended to consider the ability to pay as one factor, if not the primary factor, relevant to the determination of whether a debtor's petition constitutes "substantial abuse" under § 707(b).

■ Pilgrim makes a statutory construction argument by arguing that § 109 of the Bankruptcy Code, which is not altered by

§ 707(b), allows *any* person to become a debtor under Chapter 7. He argues that there is no express exception for debtors with particular future incomes. An individual is not required to be insolvent in order to file. Debtor's Brief, p. 3. Although the Trustee does not address this argument directly, the Court believes that § 109 is a general provision which is not inconsistent with § 707(b) as it is interpreted by this court. When applying basic principles of statutory construction, a subsequent, more narrowly defined provision such as § 707(b) preempts the more general predecessor provision in its application. When examining these two provisions together, they do not conflict. Section 707(b) is merely further restricting a petitioner defined initially under § 109.

*Common Law Analysis of § 707(b)*

The Seventh Circuit has not ruled on the application of § 707(b). However, four circuits have applied a variation of what is referred to as the "totality of the circumstances" test. The extreme application of this test is the Ninth Circuit's ruling in *In re Kelly*, 841 F.2d 908 (9th Cir.1988) which created a "per se" test for "substantial abuse" under § 707(b). The Ninth Circuit ruled that a debtor's ability to pay his debts justified a § 707(b) dismissal:

> This is not to say that inability to pay will shield a debtor from § 707(b) dismissal where bad faith is otherwise shown. But a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse.

841 F.2d at 915.

In *In re Walton*, 866 F.2d 981 (8th Cir. 1989), the Eighth Circuit followed the Ninth Circuit's "per se" test by holding that the courts below properly considered Walton's future income in applying the "substantial abuse" language of § 707(b). The court reviewed the legislative history of this provision and noted that there were no committee reports on the final version of the Act. Therefore, the report on an earlier draft, S. 445, "is the best available evidence of Congress's intent in enacting § 707(b)," 866 F.2d at 983, citing *Kelly*,

841 F.2d at 914 n. 7. The Eighth Circuit interpreted this Committee Report to mean that a court, in considering "substantial abuse" under § 707(b), should look at a debtor's ability to repay his creditors out of his future income. *Id.* at 983. The court noted that almost all of the courts that have interpreted the substantial abuse language of § 707(b) have concluded that this language encompasses consideration of the debtor's ability to pay his debts out of future income:

> In each of these cases the bankruptcy court decided that a crucial factor in determining "substantial abuse" was whether the debtor's future income could fund a repayment plan under the protection of Chapter 13.

866 F.2d at 984. When the court analyzed Walton's ability to pay his debts, it noted that he could pay off more than two-thirds of his debts under a three year plan, and in five years, could repay 100% of his outstanding unsecured debt. The Eighth Circuit held that these facts adequately rebutted the statutory presumption in 11 U.S.C. § 707(b) in favor of granting the relief requested by the debtor.

In *In re Krohn*, 886 F.2d 123 (6th Cir. 1989), the Sixth Circuit adopted a similar test to that in *Walton* and *Kelly*. The court stated that courts which have reviewed the legislative history of § 707(b) have generally concluded that in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor. Citing *Walton*, 866 F.2d at 983, the court held:

> In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking advantage over his creditors, or instead is "honest" in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. (Citations omitted). Substantial abuse can be predicated upon either lack of honesty or want of need.

886 F.2d. at 126. To determine whether a debtor is needy, the court cited several factors to be considered. However, the court stated that one factor alone, his ability to repay his debts out of future earnings, might be sufficient to warrant dismissal. *Id.* The court mentioned other factors to be considered: whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13, whether there are state remedies available, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. 886 F.2d at 127.

The last circuit to consider the definition of substantial abuse under § 707(b) was the Fourth Circuit. In *In re Green*, 934 F.2d 568 (4th Cir.1991), the court declined to follow the "per se" test articulated by the Ninth Circuit in *Kelly.* The court conceded, however, that *Kelly* is correct insofar as it indicates that the majority of cases hold that debtor's ability to repay is the *primary* factor to be considered. 934 F.2d at 572. The court reiterated that the consensus among courts is that the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances. *Id.* The court listed the following factors commonly considered under this test:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;

3. Whether the debtor's proposed family budget is excessive or unreasonable;

4. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial conditions; and

5. Whether the petition was filed in good faith.

934 F.2d at 572. The court stated that these factors, as well as the relationship of the debtor's future income to his future necessary expenses, allow the court to determine whether the debtor is seeking to take unfair advantage of his creditors for the purposes of § 707(b). The court did concede that the debtor's relative solvency may raise an inference that such a situation exists. Nevertheless, in light of the statutory presumption in the debtor's favor, the court ruled that solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7. *Id.* at 572.

The court in *Green* also mentioned that under § 109 there are no restrictions regarding who may file under Chapter 7 which addresses solvency, ability to pay, or future income. Again, this court does not see an inconsistency between § 109 and § 707(b). While a solvent debtor may not be expressly prohibited from filing under § 109, his ability to pay his outstanding debts may still be called into question under § 707(b) as possible "substantial abuse" under that provision.

A majority of district courts and bankruptcy courts have ruled in favor of the "totality of the circumstances" test. In *In re Herbst*, 95 B.R. 98 (W.D.Wis.1988), the court held that the principle factor to be considered is the ability of the debtor to repay debts for which discharge is sought. While the ability to fund a Chapter 13 plan is not a dispositive determination of ability to repay, it may serve as a useful guideline in assessing the principle factor. In *Matter of Ploegert*, 93 B.R. 641 (Bankr.N.D. Ind.1988), the court held that § 707(b) helps to implement one of Congress's major premises of the Bankruptcy Code—"that the use of the bankruptcy law should be the last resort; that if it is used, debtor should attempt repayment under Chapter 13...." (Citations omitted.) The court adopted the per se test from *Kelly* but entertained other factors as well. The court in *In re Johnson*, 115 B.R. 159 (Bankr.S.D.Ill.1990) held:

After considering the relevant legislative history and in light of developing case law, this court finds that the debtor's ability to pay his debts out of future income is the primary, though not exclusive factor, to consider in determining whether substantial abuse exists under

§ 707(b) ... While the "ability to pay" test will be the court's central focus, the question of whether substantial abuse exists must ultimately be determined on a case-by-case basis.

In *Matter of Strong*, 84 B.R. 541 (Bankr. N.D.Ind.1988), the court held:

[T]he presumption in favor of debtor is overcome by the overwhelming importance of just one factor—debtor's substantial disposable income ... We feel that the substantial amount of disposable income, in and of itself, indicates that debtor could repay a significant portion of his unsecured debts, without undue hardship. In the absence of such jeopardy, it is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them. Since the availability of Chapter 7 relief presupposes that a debtor has made a reasonable effort to pay his debts, it would be a substantial abuse of that chapter to allow a debtor to discharge those debts without first making a legitimate effort at repayment. Citing *[In re] Hudson*, 56 B.R. [415] at 419 [(Bankr. N.D.Ohio 1985) ].

The Trustee also notes two opinions from the Central District of Illinois: *In re Byrne*, No. 89–71610, 1989 WL 268880 (1989) and *In re Stratton*, 136 B.R. 804 (1991). *See* Trustee's brief p. 9. In *Byrne*, Chief Bankruptcy Judge Lessen found that "the single most important indicator of substantial abuse is the presence of enough disposable income to realistically enable the debtor to repay a significant portion of his debts through a Chapter 13 plan." He found that substantial abuse should be determined by a totality of the circumstances basis and listed a variety of other factors which courts could consider. In *Stratton*, Judge Fines found that "a debtor's ability to pay a significant portion of his/her debt outside of Chapter 7 without substantial burden is the primary factor to be considered in determining whether 'substantial abuse' exists in a given case." He found further that the Strattons were "non-needy debtors" and therefore granting them relief under Chapter 7 would be a "substan-tial abuse" as contemplated by Congress in the enactment of 11 U.S.C. § 707(b).

The Trustee alleges that under a "totality of the circumstances" test, which focuses primarily on the ability to pay, Pilgrim's case should be dismissed as "substantial abuse" under § 707(b). The Trustee argues that Pilgrim seeks to discharge unsecured debts totaling $9,491.55. With no reduction in his pre-petition standard of living, he can pay those debts in full, without interest, in less than 18 months. The Trustee argues that Pilgrim is not a needy debtor and the mere fact that he does not want to pay his bills does not mean that he should be able to discharge those debts. The Trustee points to numerous courts which have predicated a finding of substantial abuse upon far less ability to pay than that admitted by Pilgrim. *See* Trustee brief p. 13. Therefore, the Trustee prays that the decision of the bankruptcy court be reversed and remanded with instructions to dismiss Pilgrim's Chapter 7 bankruptcy petition.

Relying on *Keniston*, Pilgrim argues that an individual, acting in good faith, should have the choice between Chapter 7 and Chapter 13. *See* Debtor's brief p. 7. He argues that there is no indication that he did not intend to pay to his creditors. He claims that his expenses and other expenditures were not found to be excessive or extravagant, his petition was filed in good faith, and the related financial statements were a true representation of his financial condition. Pilgrim cites the Fourth Circuit's holding in *Green* where the court found that "income in excess of necessary expenses is not, in itself, sufficient to constitute substantial abuse." Thus, he argues, dismissal under § 707(b) should only occur where unfavorable evidence regarding other factors is involved.

This court embraces the "totality of the circumstances" test as it is defined by the Fourth Circuit in the *Green* case. When assessing "substantial abuse" under § 707(b), the court must first consider the

primary factor, the debtor's ability to pay his debts, and then any mitigating factor which may temper this ability to pay or any relevant factor independent of the debtor's ability to pay, such as bad faith. On a case-by-case basis, the court must assess whether this debtor is the dishonest or non-needy debtor whose case is intended to be dismissed under § 707(b). While the per se test of the Ninth and Eighth Circuits is attractive because of its simplicity, the court believes that the letter and spirit of § 707(b) is only met with the broader "totality of circumstances" test which considers, on a case-by-case basis, the debtor's ability to pay and all relevant factors before making a determination regarding "substantial abuse" under § 707(b).

## CONCLUSION

■ Although the Seventh Circuit has not ruled on the issue of substantial abuse under 11 U.S.C. § 707(b), four circuits, along with a clear majority of district courts, have adopted a version of the totality of the circumstances test in determining whether the debtor's financial ability to pay constitutes a "substantial abuse" under § 707(b). This court agrees that the totality of the circumstances test is the proper test to apply when determining substantial abuse under § 707(b). This court does not agree that the more narrow standard set out in *In re Keniston*, 85 B.R. 202 (Bankr. D.N.H.1988), the "shock the conscience" standard, was appropriately applied in this case. Therefore, the Bankruptcy Court's decision is VACATED and REMANDED for reconsideration of the facts under the "totality of the circumstances" test.