**In re David RAGAN, Debtor.**

**Bankruptcy No. 93–31851.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

July 29, 1994.

Daniel McDermott, Office of the U.S. Trustee, Cleveland, OH.

Elizabeth A. Vaughan, Trustee, Toledo, OH.

Louis A. Breuer, Toledo, OH, for debtor.

Johnna M. Bella, Toledo, OH, for National City Bank.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Continued Hearing on United States Trustee's (hereafter "Trustee") Motion to Dismiss Chapter 7 Petition. At the Hearing, the parties were afforded the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court granted Debtor leave to amend schedules to include opening dates of charge accounts and dates of usage by Janu-ary 30, 1994. Although untimely, Debtor filed an Amendment to Petition, Schedules, and/or Statement of Affairs Pursuant to Bankruptcy Rule 1009 and an amended Schedule F. This Court has reviewed the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Trustee's Motion to Dismiss should be Granted.

### FACTS

Debtor has a Bachelor of Science Degree in Business Administration; attended law school for two (2) years; and has twenty-five (25) years of experience in hospital administration. In 1990, he was separated from his employment at Flower Hospital (hereafter "Flower") as an administrator earning Sixty-six Thousand and 00/100 Dollars ($66,000.00) annually. In December, 1991, Debtor suffered a heart attack and received open heart surgery.

Debtor is employed at will by Pinkerton Security and Investigation Services (hereafter "Pinkerton") earning Six and 00/100 Dollars ($6.00) per hour or net monthly income of Eight Hundred Sixty-three and 00/100 Dollars ($863.00). His spouse earns approximately Eight Thousand and 00/100 Dollars ($8,000.00) annually.

Debtor and his spouse typically incur monthly expenses, exclusive of the mortgage payment, maintenance, insurance, real estate taxes and Debtor's support for his mother, which exceed One Thousand and 00/100 Dollars ($1,000.00). Debtor's major asset, real estate with a market value of One Hundred Thirty-five Thousand and 00/100 Dollars ($135,000.00), is subject to a mortgage with National City Bank (hereafter "National City") of One Hundred Thousand and 00/100 Dollars ($100,000.00). On October 5, 1993, the Motion for Relief from Stay filed by National City was granted. At the time of Hearing, the real estate was subject to foreclosure.

Upon separation from Flower, Debtor received a lump sum distribution of One Hundred Seventy Six Thousand Eight Hundred Eighty-five and 00/100 Dollars ($176,885.00) from his pension plan. In August, 1990, this

amount was rolled over into an Individual Retirement Account (hereafter "IRA") and in 1991, Debtor's received a net distribution from the IRA of Ninety Two Thousand and 00/100 Dollars ($92,000.00). From this amount, Debtor contributed One Thousand Three Hundred and 00/100 Dollars ($1,300.00) to charities; continued to provide financial support for his mother; paid Nineteen Thousand Nine Hundred Twenty-seven and 57/100 Dollars ($19,927.57) in college tuition and expenses for his children; paid unsecured indebtedness of approximately Twenty Thousand and 00/100 Dollars ($20,-000.00); and purchased a washer, dryer, stove and refrigerator for approximately Four Thousand and 00/100 Dollars ($4,000.00).

In 1992, Debtor's distributions from the IRA totalled Seventy-four Thousand Eighty-four and 94/100 Dollars ($74,084.94). From this amount, Debtor contributed Ten Thousand Three Hundred Eighty-eight and 59/100 Dollars ($10,388.59) toward the education of his children; repaid Ten Thousand and 00/100 Dollars ($10,000.00) of unsecured indebtedness totalling Thirty Two Thousand and 00/100 Dollars ($32,000.00); and provided approximately Two Thousand Nine Hundred and 00/100 Dollars ($2,900.00) in support for his mother. Debtor incurred federal and state tax obligations for 1992 of Fourteen Thousand Three Hundred Forty-six and 20/100 Dollars ($14,346.20).

During 1992, Debtor obtained several cash advances on his First Card account for purposes of paying personal income taxes; real estate taxes; and job search expenses. Between January 2, 1992 and September 12, 1992, Debtor had reduced his First Card balance to Twenty-one and 26/100 Dollars ($21.26) from Two Thousand Three Hundred Forty and 01/100 Dollars ($2,340.01). However, from September, 1992 through December 23, 1993, Debtor incurred additional indebtedness of approximately Two Thousand Eight Hundred and 00/100 Dollars ($2,800.00). When Debtor made his final payment on the account in February, 1993, the balance due on the account exceeded Two Thousand Six Hundred and 00/100 Dollars ($2,600.00).

Debtor maintained during 1992 an average monthly balance of Seven Hundred Thirty-four and 93/100 Dollars ($734.93) on his British Petroleum (hereafter "BP") account and he made average monthly payments of One Hundred Eighty-eight and 94/100 Dollars ($188.94). After the January, 1993 Statement, Debtor failed to make any payments to his BP account, leaving a balance due as of March 30, 1993 of Eight Hundred Eighty-six and 87/100 Dollars ($886.87).

From February, 1992 through December, 1992, Debtor's National City VISA account had a monthly balance exceeding Seven Thousand and 00/100 Dollars ($7,000.00) even though throughout this period, he made payments of Three Thousand One Hundred Seventy-five and 15/100 Dollars ($3,175.15). Throughout the year, Debtor took additional cash advances totalling One Thousand Nine Hundred Eighty and 00/100 Dollars ($1,980.00); and made purchases totalling Two Hundred Ninety-seven and 46/100 Dollars ($297.46). Debtor made his final payment on the VISA account on November 23, 1992 and the balance remaining unpaid is Seven Thousand Eight Hundred Five and 01/100 Dollars ($7,805.01). In addition, Debtor incurred an arrearage on his mortgage with National City during 1992.

On June 18, 1993, Debtor filed for relief under Chapter 7 of the Bankruptcy Code. On the Schedules, Debtor claimed total liabilities of One Hundred Fifty Thousand Seven Hundred Ninety-five and 23/100 Dollars ($150,795.23); assets of One Hundred Forty Thousand Two Hundred Ten and 00/100 Dollars ($140,210.00); one (1) secured debt of One Hundred Thousand and 00/100 Dollars ($100,000.00); unsecured nonpriority debts of approximately Thirty-six Thousand and 00/100 Dollars ($36,000.00); and unsecured priority debts exceeding Fourteen Thousand and 00/100 Dollars ($14,000.00).

The Trustee filed a Motion to Dismiss alleging that Debtor received during the two (2) years immediately preceding his filing for relief under Chapter 7, sufficient income to fund a 100% Chapter 13 Plan. The Trustee also stated that Debtor's dealings with his Creditors during the two (2) years immediately preceding the filing of his Petition,

constitute substantial abuse under 11 U.S.C. § 707(b) and are indicative of bad faith.

At the Hearing, this Court granted Debtor leave to amend Schedule F. Debtor filed an Amendment, modifying the collective amount of unsecured nonpriority claims for BP Oil, First Card, and National City VISA from Eleven Thousand Four Hundred Fifty-nine and 45/100 Dollars ($11,459.45) to Eleven Thousand Two Hundred Ninety-one and 17/100 Dollars ($11,291.17).

## LAW

11 U.S.C. § 707(b) reads as follows:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

## DISCUSSION

This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and this Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1334.

■ To succeed under Section 707(b), the Trustee must prove that Debtor's indebtedness is "primarily consumer debt" and that granting a discharge would be a "substantial abuse" of the provisions of Chapter 7. The Trustee has the burden to overcome the statutorily imposed presumption in favor of granting a discharge to the Debtor. *See* 11 U.S.C. § 707(b).

■ Consumer debt is defined under 11 U.S.C. § 101(8) as debt incurred by an individual primarily for a personal, family, or household purpose. The debtor has "primarily" consumer debt when more than half of the dollar amount owed is consumer debt. *In re Farrell,* 150 B.R. 116 (Bkrtcy.D.N.J. 1992) (citing *In re Kelly,* 841 F.2d 908, 913

(9th Cir.1988)). In the case at bar, the Court finds that Debtor's indebtedness is primarily consumer debt as defined under Section 101(8) of the Bankruptcy Code.

■ Although not defined by the Bankruptcy Code, the Sixth Circuit has adopted a standard of review for "substantial abuse" based upon the totality of circumstances. *See In re Krohn,* 886 F.2d 123 (6th Cir.1989). In deciding whether to dismiss a Chapter 7 petition for substantial abuse under 11 U.S.C. § 707(b), this Court must consider first, whether the debtor is merely seeking an advantage over creditors, or instead, is honest and undeceptive in his dealings with the creditor; and second, whether debtor's financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. *Id,* at 126 (citing 4 *Collier on Bankruptcy* ¶ 707.07 at 707–20 (15th ed. 1989)).

■ Substantial abuse can be predicated upon either lack of honesty or want of need. *In re Krohn, supra,* at 126. Relevant factors in determining debtor's honesty include whether debtor has exhibited bad faith in filing the petition and schedules or engaged in any "eve of bankruptcy purchases"; and whether debtor has suffered unforeseen calamity or is merely using Chapter 7 provisions to garner relief from past excesses. *In re Krohn,* 78 B.R. 829 (Bkrtcy.N.D.Ohio 1987) *aff'd* 886 F.2d 123 (6th Cir.1987).

Want of need is measured by whether the debtor enjoys a stable source of future income; whether the debtor is eligible for adjustment of debts through Chapter 13 of the Bankruptcy Code; whether there are state remedies which may ease the financial burden; whether there are remedies available through private negotiations; and whether expenses may be reduced without deprivation of food, shelter, clothing and other necessities. *Krohn, supra,* at 126–127 (citing *In re Walton,* 866 F.2d 981, 984–985 (8th Cir. 1989)).

There is no evidence that Debtor made any "eve of bankruptcy" purchases. Although Debtor's lost employment, significant reduction of income, and heart condition are unforeseen calamities, they did not force Debtor to file bankruptcy. Debtor's reckless

spending of his entire retirement account is the impetus for seeking Chapter 7 relief. Therefore, this Court's decision to Grant Trustee's Motion to Dismiss is predicated upon Debtor's bad faith and lack of honesty in using these proceedings to garner relief from past excesses.

During the two (2) years immediately preceding Debtor's filing for relief under Chapter 7, Debtor withdrew over One Hundred Sixty Thousand and 00/100 Dollars ($160,000.00) from his IRA. At the time of distribution, Debtor had been separated from his employment at Flower and was earning over Fifty Thousand and 00/100 Dollars ($50,000.00) less annually. Yet, the real estate, which he planned to reaffirm and which is subject to a loan of One Hundred Thousand and 00/100 Dollars ($100,000.00), is now in foreclosure. By August, 1992, Debtor reduced the balance of his First Card to less than Twenty Five and 00/100 Dollars ($25.00); however, when he filed bankruptcy, the unpaid balance totalled Two Thousand Eight Hundred Seventy-one and 07/100 Dollars ($2,871.07). When money was plentiful during 1991 and 1992, Debtor showed no resolve for reducing his monthly expenses or ridding himself of monthly charge card payments. Instead, Debtor commenced "robbing Peter to pay Paul" by taking cash advances to pay real estate taxes and other necessary expenses.

Debtor's financial history shows a pattern of reducing his monthly charge card obligations and then charging up to or past the prescribed limits knowing that he could not repay the indebtedness based upon his salary from Pinkerton alone. In effect, during 1992 and 1993, Debtor lived on credit; made minimal payments on accounts; and obtained cash advances to fund a lifestyle which exceeded his means. Upon spending his entire retirement proceeds, Debtor filed for bankruptcy relief.

The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide an equitable distribution to creditors. *See In re Krohn, supra,* at 833. Debtor, in this case, seeks to obtain the fresh start without regard for his Creditors. This Court finds Debtor's acts within the two (2) years preceding the filing of his Petition of incurring debts which he could not afford to repay but for his retirement income, exhibit bad faith in filing of the Petition and constitute a "lack of honesty" which is tantamount to the substantial abuse requirement of Section 707(b).

In making the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

In judging the credibility of the witnesses and the weight given their testimony, this Court has considered the witnesses' age, intelligence, memory and demeanor while testifying. The Court has also considered the reasonableness of the witnesses' testimony in light of the evidence in the case and any interest, bias, or prejudice which they may have.

*Accordingly, it is*

**ORDERED** that the Trustee's Motion to Dismiss be, and is hereby, **GRANTED.**