**In re MD Taj UDDIN, Debtor.**

**Bankruptcy No. 95–B–42501.**

United States Bankruptcy Court, S.D. New York.

May 20, 1996.

---

Office of the United States Trustee, New York City, Mary E. Tom, Acting United States Trustee.

Paul A. Hayt, New York City, for debtor.

*MEMORANDUM DECISION ON MO-TION BY UNITED STATES TRUST-EE TO DISMISS DEBTOR'S CASE.*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The Office of the United States Trustee ("Trustee") seeks an order pursuant to § 707(b) of the Bankruptcy Code ("Code") dismissing MD Taj Uddin's ("debtor") voluntary chapter 7 case. There is no dispute that debtor's indebtedness consists principally of "consumer debts" and that debtor lacks income to pay them. For debtor, the latter fact precludes a "substantial abuse" dismissal under § 707(b). The Trustee contends that debtor's ability to repay his debts out of future income is but one factor relevant to the § 707(b) analysis and that based upon the totality of the circumstances, debtor's case must be dismissed. For the reasons stated herein, the Trustee's motion is granted and debtor's case is dismissed.[1]

### Facts

The facts, as determined at the evidentiary hearing conducted herein are as follows. On June 6, 1995, debtor commenced this case by

---

1. Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

filing a voluntary petition for relief under chapter 7 of the Code. Debtor resides with his wife and two children in a condominium apartment located in the Bronx, New York. His wife is pregnant with their third child. Debtor's petition lists Citibank Mortgage Co. as his sole secured creditor in the sum of $35,502.00. The unsecured claims listed in the petition total $170,418.48. All of that indebtedness was incurred between September 1, 1994 and March 15, 1995. A total of approximately $60,000 of that indebtedness was incurred in connection with debtor's purchase of airline tickets, clothing, jewelry, toys, a radio, a television, a microwave oven, a body massage machine, perfumes and cosmetics.

For approximately 12 years ending February 26, 1993, debtor was employed as a waiter at Windows on the World, a restaurant located in the World Trade Center, New York, New York. On February 26, 1993, after the terrorist bombing of the World Trade Center, the restaurant closed and debtor lost his job. At that time debtor's weekly income was between $600 and $700. Debtor has been unemployed since March 1993. Through January 1994, he received weekly public assistance payments totalling $277. In December 1995, he again began to receive public assistance.

Debtor acquired at least two credit cards after he became unemployed. Although debtor did not solicit either card, he admittedly misrepresented his annual income on the applications he filed to obtain them by stating that he was self-employed with an annual household income of $29,000, when in fact he was unemployed and his household had no income. In the fall of 1994, debtor began taking gambling trips to Atlantic City. On each instance he paid his brother-in-law $100 to $150 for use of his car. Over a four month period he made ten to twenty such trips and accrued losses aggregating $60,000. He underwrote those losses and the costs associated with each trip with credit card cash advances.

Debtor testified that in January 1995, Vijesh Sharma, an acquaintance who accompanied him on two gambling trips, asked him for a loan. Sharma allegedly told debtor that he needed the money to open a restaurant, that he would repay the loan with 25% interest and provide debtor a job in the restaurant after it opened. Without checking Sharma's background and/or the *bona fides* of his proposal, debtor allegedly loaned him $50,000 cash, which he obtained from advances against his credit cards. Debtor contends that Sharma defaulted on that loan and cannot be located. There is no note or other writing evidencing the alleged loan.

To support his story, debtor produced a copy of a March 1, 1995 letter to him from the Independence Savings Bank. Debtor apparently maintained a savings and checking account at that bank although he failed to disclose either one in his chapter 7 petition. Among other things, the letter advised debtor that a $15,000 check which debtor deposited on January 30, 1995, had been returned to the bank dishonored. It does not provide a copy of the check or otherwise identify the payor. Debtor also produced a copy of a $15,000 check drawn on an account at Chase Manhattan Bank, purportedly signed by Sharma and purportedly delivered to debtor in partial satisfaction of the alleged loan. Debtor did not attempt to negotiate it. He admits to filling in the dollar amount on the check, although he claims that Sharma signed it. He produced no evidence to corroborate his assertions.

*Discussion*

■ A principal goal of the bankruptcy laws is to afford honest debtors a fresh start by relieving them from the weight of oppressive indebtedness. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). However, there is no Constitutional right to discharge in bankruptcy, and Congress may deny access to the bankruptcy laws as it sees fit. *United States v. Kras*, 409 U.S. 434, 446–47, 93 S.Ct. 631, 638–39, 34 L.Ed.2d 626 (1973). Section 707(b) of the Code is one such limitation. It provides, in part, that:

> [a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individ-

ual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.

11 U.S.C. § 707(b). Thus, this section limits a chapter 7 debtor's right to a "fresh start" by permitting the "bankruptcy court to deal equitably with the situation in which an unscrupulous debtor seeks to gain the court's assistance in a scheme to take unfair advantage of his creditors." *In re Green*, 934 F.2d 568, 570 (4th Cir.1991). *See also In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) (§ 707(b) serves notice upon those persons tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing).

Because Uddin admits that his debts consist primarily of "consumer debts", we need only determine whether it would be a "substantial abuse" of the provisions of chapter 7 if Uddin were granted relief thereunder. There is a "presumption in favor of granting the relief requested by debtor." 11 U.S.C. § 707(b). The Trustee bears the burden of overcoming that presumption. *See In re Ragan*, 171 B.R. 592, 595 (Bankr.N.D.Ohio 1994).

Uddin contends that a "substantial abuse" dismissal under § 707(b) is warranted only when the debtor is capable of repaying his pre-petition debts. He argues that because he is unemployed, expecting his third child and without income to pay his creditors, the Trustee's motion must be denied. Most courts apply a "totality of the circumstances" test in determining whether a "substantial abuse" dismissal is warranted under § 707(b) of the Code. *See, e.g., In re Green*, 934 F.2d at 572; *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *In re Walton*, 866 F.2d 981, 983–84 (8th Cir.1989); *In re Pilgrim*, 135 B.R. 314, 320–21 (C.D.Ill.1992); *In re Vianese*, 192 B.R. 61, 68–72 (Bankr.N.D.N.Y.1996); *Matter of Blair*, 180 B.R. 656, 658 (Bankr. N.D.Ala.1995); *In re Gavita*, 177 B.R. 43, 47 (Bankr.W.D.Pa.1994); *In re Dominguez*, 166 B.R. 66, 68 (Bankr.E.D.N.C.1994); *In re Bacco*, 160 B.R. 283, 288 (Bankr.W.D.Pa. 1993); *In re Veenhuis*, 143 B.R. 887, 889

(Bankr.D.Minn.1992); *In re Keniston*, 85 B.R. 202, 229 (Bankr.D.N.H.1988); *In re Strong*, 84 B.R. 541, 545 (Bankr.N.D.Ind. 1988); *In re Peluso*, 72 B.R. 732, 739 (Bankr. N.D.N.Y.1987); *In re White*, 49 B.R. 869, 873 (Bankr.W.D.N.C.1985). Debtor's ability to pay pre-petition debt out of future income is a significant factor in that analysis. However, it is not dispositive. *See, e.g., In re Krohn*, 886 F.2d at 127; *In re Vianese*, 192 B.R. at 69. Other relevant factors include:

(1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) whether the debtor's proposed family budget is excessive or unreasonable;

(4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) whether the petition was filed in good faith.

*E.g., In re Green*, 934 F.2d at 572 (citing cases).

Debtor argues that by application of *In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y.1985) and *In re Mastroeni*, 56 B.R. 456 (Bankr. S.D.N.Y.1985), the Trustee's motion should be denied. In *Edwards*, a husband and wife filed a joint petition under chapter 7 of the Bankruptcy Code. Their pre-petition debt consisted of consumer debt and student loans aggregating $10,500 and $3,000, respectively. Their combined annual gross income of $60,-000 yielded joint monthly take home pay of $2,550. Their monthly expenses, inclusive of $250 recreational expenses, aggregated $2,366, leaving a monthly budget surplus of $184. The court directed debtors to show cause why their petition should not be dismissed pursuant to Code § 707(b). 50 B.R. at 935.

In response thereto, debtors submitted evidence establishing, among other things, (i) during the year immediately preceding their bankruptcy, they had unsuccessfully worked with a budget and credit counseling service to pay down their debt, notwithstanding their

adherence to a strict budget, (ii) the filing of their case was precipitated by the garnishment of Mr. Edwards' salary by a judgment creditor, (iii) debtors were expecting their fourth child and due to that pregnancy, Mrs. Edwards expected to stop work thereby reducing debtors' joint take home pay by $950, and (iv) debtors could reasonably expect their household expenses to increase with the addition of another child. 50 B.R. at 939–40. A representative of the budget counseling service testified, by affidavit, that " 'given the correct budget of the EDWARDS, there exists no viable way these debts can be repaid without affecting their ability to provide for themselves and their children.' " *Id.* (emphasis in original).

The court withdrew its motion. *Id.* at 943. In doing so, it characterized a § 707(b) motion as "a type of motion for failure to state a claim for relief [under chapter 7]". *Id,* at 936. It found that relief under § 707(b) is appropriate "to deny Chapter 7 relief to those persons whose pleadings in the form of the petition, schedules, statement of affairs and statement of income and expenses fail to reflect a need for the relief being sought because they do not reflect that the debtor is now suffering or will suffer in the near future economic hardship." *Id.* at 935. Based upon the evidence adduced by debtors, the court found that granting relief to them would not be a substantial abuse of chapter 7. It concluded that

> [t]he worst that can be said of the Debtors is that they are undisciplined. They were unable to carry out pre-filing repayment plan in the year prior to filing. Their family is due to increase momentarily. The Edwards are as likely to gain discipline by being freed of past debt through obtaining a Chapter 7 discharge as they are by being forced to live either with a continued wage garnishment or with a Chapter 13 plan.

*Id.* at 940.

Debtor contends that *Edwards* establishes that the only inquiry relevant to a § 707(b) motion is whether a chapter 7 debtor can pay his debts. We don't read that decision so narrowly. The *Edwards* court was writing on a substantially clean slate, *see id.* at 936

("[t]o date there is apparently only one reported case considering Code § 707(b)"), and actually considered many of the factors relevant to a "totality of the circumstances" analysis in reaching its conclusion. For example, the court considered the circumstances under which debtors' joint chapter 7 petition was filed, the efforts made by debtors to control their spending and pay down their debt, the reasonableness of their budget and whether their petition accurately represented their true financial condition. Implicit in the decision was the court's conclusion that debtors' chapter 7 petition had been filed in good faith. *Id.* at 940–41. *Compare In re Green,* 934 F.2d at 572. Moreover, unlike the *Edwards* debtors, Uddin made no attempt to repay his creditors or curb his spending. Further, his financial distress is directly related to purchases of luxury goods and accrual of gambling debts—factors not present in *Edwards.* Rather than being an unfortunate and undisciplined debtor entitled to relief under chapter 7, Uddin is attempting to "lead the life of Riley while his creditors suffer on his behalf." *In re Bryant,* 47 B.R. 21, 24 (Bankr.W.D.N.C.1984). Thus, *Edwards* does not support debtor's position.

In *In re Mastroeni,* 56 B.R. 456, the court issued a notice to debtor to show cause why his chapter 7 petition should not be dismissed under § 707(b) on the ground that granting the relief would be a substantial abuse of the provisions of chapter 7. The evidence disclosed that debtor was employed, earned $73,000 annually and had six unsecured bank loans aggregating $110,850. Excluding his salary, debtor's assets totalled approximately $14,000 and his schedule of current income and expenditures reflected net monthly take home pay and expenses of $4,000 and $3980, respectively. *Id.* at 457–58. Debtor's financial difficulties stemmed from substantial speculative stock market trading resulting in loss of substantial funds and a previous job. *Id.* Prior to the commencement of his chapter 7 case, debtor made interest payments totalling $90,000 on account of the banks' claims. *Id.* The court noted that debtor's case presented "unusual circumstances" arising out of

the fact that this Chapter 7 debtor's obligations exceed the maximum amounts permitted for Chapter 13 relief under 11 U.S.C. § 109(e), whereas his assets, exclusive of his postpetition salary are unattractively minimal, so that liquidation under either Chapter 7 or 11 of the Bankruptcy Code would not be regarded by his creditors as an acceptable alternative.

*Id.* at 457. It vacated its order finding that the legislative intent in enacting § 707(b) was "to encourage repayment in those instances where a debtor has sufficient income to repay creditors fully or partially," and that the evidence proved that debtor was not eligible for chapter 13 relief and that chapter 11 was not a meaningful alternative. *Id.* at 459. Debtor urges us to apply that rationale in denying the Trustee's motion. However, debtor's blatant abuse of consumer credit so distinguishes him from Mr. Maestroni, that the case is inapposite. In *In re Krohn,* 886 F.2d 123, the court rejected the *Maestroni* rationale in affirming the bankruptcy court's dismissal of a chapter 7 case pursuant to § 707(b). In rejecting debtor's contention that § 707(b) relief was unwarranted where his unsecured debts exceeded the statutory maximum for chapter 13 relief and his assets were too small to make chapter 11 relief worthwhile, the court stated that:

> inability to qualify under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy. *The anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7.* Indeed, such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of $100,000, thereby avoiding dedication of future earnings to debt retirement under Chapter 13.

*Id.* at 127 (emphasis added). *Accord In re Stratton,* 136 B.R. 804, 805–06 (Bankr. C.D.Ill.1991) (rejecting *Mastroeni* and following *Krohn* ). Applying the *Mastroeni* rationale to this case likewise would create an unwarranted result by rewarding Uddin for abusing consumer credit and making extravagant purchases which he knew at the time he could not repay, simply because he is unemployed and unable to resort to relief under chapters 11 or 13 of the Code. We decline to do so.

Debtor's proposed family budget appears reasonable, and his schedules and statements of current income and expenses accurately reflect his true financial condition. Nonetheless, under the facts of this case, dismissal pursuant to § 707(b) is warranted. Although Uddin's financial problems began when he lost his job at Windows on the World, that unexpected and sudden event did not precipitate his resort to chapter 7. Rather, the filing was triggered more than two years later by his reckless and unwarranted accumulation of $170,418.48 in consumer debt. Debtor knew he could not repay that indebtedness when he incurred it. As of September 1, 1994, when his spending spree began, debtor had been out of work for approximately eighteen months, and had no prospect of imminent future employment. Although debtor's alleged motive for gambling was to win money to repay his creditors, those losses were well within his control and could have been avoided. *See In re Vianese,* 192 B.R. at 71.

Debtor admittedly misrepresented his financial condition in obtaining at least two credit cards. Although he contends that he incurred the underlying indebtedness to support his family while he was unemployed, his admissions prove otherwise. For example, in Schedule F of his chapter 7 petition, debtor acknowledges spending $1,800 for clothing at Saks Fifth Avenue, $4,400 at Sears for toys, clothing and a television, and $130 for cologne. He admits that he bought airline tickets with his credit cards, sold them for approximately $9,000 to his friends and members of his family, and used the cash generated by those sales for gambling and for his alleged loan to Sharma. Most of the charges enumerated on Schedule F to the petition appear to be on account of luxury or nonessential items. Moreover, debtor's Statement of Expenditures demonstrates that his average monthly expenses total $2,100. Thus, assuming, *arguendo,* that debtor used his available credit for monthly living ex-

penses between September 1, 1994 and March 15, 1995, the total indebtedness would approximate $14,700. Debtor accrued more than thirteen times that amount of indebtedness. This course of conduct evidences debtor's bad faith. *See, e.g., In re Ragan,* 171 B.R. at 595; *In re Gavita,* 177 B.R. at 48.

Nothing in the record corroborates debtor's self-serving testimony that he made the alleged $50,000 loan to Sharma, or even that Sharma exists. We attach no weight to the bank's letter or copy of what is purported to be Sharma's check. However, even assuming, *arguendo,* that the debtor loaned money to Sharma, in light of how little debtor knew of the project or the borrower, that indebtedness is the product of a reckless spending scheme, not an unfortunate mistake in business judgment.

Uddin is correct that in every case in which the "totality of the circumstances" test has been applied in support of a § 707(b) dismissal, the debtor had some income. Although it is undisputed that Uddin lacks funds to repay his debts, ability to pay, while a primary consideration, is not the exclusive consideration. *See In re Green,* 934 F.2d at 572; *In re Krohn,* 886 F.2d at 127; *In re Pilgrim,* 135 B.R. at 319; *In re Tindall,* 184 B.R. 842, 844 (Bankr.M.D.Fla.1994). Under the facts of this case, debtor's indigence does not preclude a § 707(b) dismissal. *See In re Krohn,* 886 F.2d at 127–28 (" 'The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide for an equitable distribution to creditors. The debtor herein, although he has minimal assets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis.' ") (quoting bankruptcy court opinion). Based upon the totality of the circumstances herein, we find that dismissal of debtor's chapter 7 case is warranted under § 707(b) of the Code.

#### Conclusion

For the foregoing reasons, the Trustee's motion is granted.

SETTLE ORDER.