**In re Michele D. PENNY and Kenneth W. Penny, Debtors.**

No. 02–75159.

United States Bankruptcy Court, C.D. Illinois.

Aug. 8, 2003.

William A. Krajec, Springfield, IL, for Debtor.

Mariann Pogge, Springfield, IL, trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter came before the Court for trial on August 5, 2003, on the United

States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) and the Debtors' Objection thereto. Under § 707(b), the Court may dismiss a case filed by an individual debtor or debtors under Chapter 7 whose debts are primarily consumer debts if the Court finds that the granting of the relief would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code.

■ Rule 1017(e) of the Federal Rules of Bankruptcy Procedure provides that the U.S. Trustee must file any motion under Section 707(b) within 60 days of the first date set for the meeting of creditors under § 341, unless extended by the Court. Although there are no reported cases on the issue, the Court is of the opinion that the decision whether a bankruptcy filing was a substantial abuse must be determined on the date the petition was filed and not the date of the hearing on the § 707(b) motion. Nothing in the legislative history of Section 707(b) indicates that a post-petition date should be used.

■ Section 707(b) affords a presumption in favor of granting the relief sought, i.e. a Chapter 7 discharge. 11 U.S.C. § 707(b). Thus, the U.S. Trustee bears the burden of overcoming the presumption by proving that the Chapter 7 filing should be dismissed because it is abusive and that the level of abuse is substantial. *In re Farrell,* 150 B.R. 116 (Bankr.D.N.J.1992). In determining whether substantial abuse of the bankruptcy process would be sustained if a case is not dismissed, the Court must utilize a totality of the circumstances test and, in doing so, consider all relevant mitigating and aggravating factors. *In re Pilgrim,* 135 B.R. 314, 319 & 321 (C.D.Ill.1992). When considering the totality of the circumstances, courts typically apply the following factors:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

3. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect his true financial condition;

4. Whether the debtor enjoys a stable source of future income;

5. Whether he is eligible for adjustment of his debts through Chapter 13;

6. Whether there are state remedies with the potential to ease his financial predicament;

7. The degree of relief obtainable through private negotiations;

8. Whether his expenses can be significantly reduced without depriving him of adequate food, clothing, shelter, and other necessities; and

9. Whether the petition was filed in good faith.

*In re Ditch,* 2002 WL 32001245 at *2 (Bankr.C.D.Ill), *citing In re Green,* 934 F.2d 568 (4th Cir.1991) and *In re Krohn,* 886 F.2d 123 (6th Cir.1989).

■ In this case, Debtors filed their voluntary Chapter 7 petition on November 27, 2002, and the U.S. Trustee filed the Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) on February 10, 2003, within the time limit prescribed by Bankruptcy Rule 1017(e). Debtors' Statement of Financial Affairs indicated a joint gross 2002 year-to-date income of $113,787 and a joint income for the year 2001 of $117,642. Mr. Penny earned approximately $36,000 in 2001 and in 2002. Mrs. Penny, a traveling

LPN, earned $77,703 in 2002 and $80,952 in 2001.

In its Motion, the U.S. Trustee points out that Debtors seek to discharge unsecured consumer debt of $21,453.89. They have no Schedule E priority debt, and their stated intention was to reaffirm the debts against both their house and their car. Debtors' Schedule I monthly net income was shown as $6,278.33. Debtors list Schedule J monthly expenses of $6,952, which the U.S. Trustee asserts should be reduced to $5,064. The U.S. Trustee contends that Debtors' Schedule I income exceeds their adjusted Schedule J expenses by $1,214.33 per month and that, accordingly, Debtors could fund a 100% Chapter 13 plan in 17.7 months at a rate of $1,214.33 per month or a 100% plan in 36 months at a rate of $595.94 per month.

Examining the facts of this case with eye toward the factors set forth in *Ditch, supra,* the filing of this bankruptcy petition was not brought on by a sudden illness, calamity, disability, or unemployment. At the time the case was filed, and at the time the Motion to Dismiss was filed, both Debtors were employed and were on track to earn well over $100,000 for the year. Mr. Penny enjoyed gainful full-time employment, and Mrs. Penny was employed in a high-paying position as a licensed practical nurse.

Debtors aver that Mrs. Penny's last nursing position ended on July 3, 2003, and that she had not yet, at the time of trial, found another position. However, that unfortunate fact certainly had no bearing on Debtors' decision to file bankruptcy inasmuch as the bankruptcy filing predated the job loss by eight months.

Debtors' Schedule J expenses show monthly living expenses of $6,952. At trial, it was conceded that the $488 monthly payment for "son's car" is now being made by the son, not by the Debtors. It was also conceded that Mrs. Penny's out-of-town living expenses, scheduled at $1,000 per month, are not being incurred and will not again be incurred unless she finds employment away from home. It was further conceded that Debtors' monthly transportation expense of $800 is grossly overstated inasmuch as it substantially consists of expenses incurred by Mrs. Penny when she was working in northern Illinois and commuting in the Chicago metropolitan area. Finally, the Court questions the reasonableness of monthly clothing expenses of $400 and recreation of $200.

Making these adjustments leads to the conclusion that Debtors' reasonable monthly living expenses are somewhere in the vicinity of the figure proffered by the U.S. Trustee, that being about $5,000. Debtors maintain that, even if that were true, their current income is insufficient to meet their reduced expenses.

Debtors' case was filed at a time when Debtors were earning well in excess of $100,000 per year and in order to discharge $21,453.89 in unsecured consumer debt. At trial, Mrs. Penny testified that had she known that the Debtors' high income would have aroused scrutiny by the U.S. Trustee, she "could have lied and said I didn't have a job". These facts alone strongly suggest that the case was not filed in good faith.

Debtors are eligible for Chapter 13 relief. However, Debtors contend that they are unable to fund a Chapter 13 plan because of Mrs. Penny's unemployment.

Mrs. Penny has been unemployed for approximately one month. Mrs. Penny testified that she intends to return to work when she is able to find a position. Mrs. Penny's employment history demonstrates that she is a highly-qualified, highly sought after nursing professional. Despite Mrs. Penny's dire predictions about her ability

to find suitable employment, the Court finds Debtors' employment and earning history over the past two years much more indicative of the Debtors' prospective financial circumstances. The dismissal of this case is mandated by the circumstances which were present at the time of the filing. However, the dismissal does not preclude the Debtors from seeking relief under Title 11 should Mrs. Penny's ominous projections come true.

For all these reasons, and based upon the totality of the circumstances, the Court finds that the U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) should be granted.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.