### In re Michael J. ONTIVEROS, Debtor.

### No. 96–4041.

United States District Court, C.D. Illinois.

June 18, 1996.

jurisdiction in this case, wherever it is venued.

D. Phillip Anderson, Peoria, IL, for plaintiff.

Michael A. Williams, Williams Buckrop Malvik & Assoc. PC., Rock Island, IL, for defendant.

## *ORDER*

McDADE, District Judge.

█ Before the Court is a bankruptcy appeal filed by Plaintiff–Appellant United States Trustee ("Trustee").[1] The Court finds in favor of Plaintiff–Appellant and re-

---

1. Plaintiff–Appellant filed its brief on May 8, 1996. Pursuant to Federal Rule of Bankruptcy 8009, Defendant–Appellee was given 15 days in which to file a responsive brief. When this deadline passed, the Court ordered Defendant–Appellee on May 31, 1996, to show cause why it had not timely filed its brief. The Court noted that filing the brief within 7 days would satisfy the show cause order. Once again, this deadline passed without a response. Thus, as warned in the order to show cause, the Court decides this case based only upon Plaintiff–Appellant's initial brief. Because no responsive brief was filed, the Court will not require further briefing by Plaintiff–Appellant.

verses the decision of the Bankruptcy Court below.

## BACKGROUND

The Debtor, Michael J. Ontiveros, is a divorced 42–year–old male with no dependents. He has been employed by John Deere for over 15 years and currently earns an annual salary in excess of $60,000 as an engineering analyst. The divorce in 1990 obligated him to assume certain marital debts, including $25,000 in credit card purchases,[2] to which he added another $10,000 prior to filing his bankruptcy petition. In addition, he took out a loan from the Deere & Company Credit Union in order to re-establish himself after the divorce. The total unsecured debt he seeks to discharge in bankruptcy is approximately $40,000.

Since 1991, Ontiveros has experienced severe hip and neck problems which kept him from working about three months each year for the past three and a half years.[3] He received his regular salary during these periods of medical leave. In addition, most of the medical expenses are covered by insurance. None of the scheduled debt in this case is attributable to medical care. During the period of his medical problems, his income increased from $50,767.63 in 1993, to $58,867.10 in 1994, to his current annual income of approximately $64,272.00.

On the other hand, Ontiveros has previously had to pay several hundred dollars per month for certain medications that were not covered by the insurance policy. In addition, he must pay for his own living expenses and hotel rooms when he travels to medical facilities such as the Mayo Clinic. These expenses may total up to $1,000 per trip. He must also pay for any alternative treatments that he seeks for his condition. Ontiveros is concerned that his job may be in jeopardy because of his absences for medical leave. Various "colleagues and friends" have made remarks to him about this. His job entails a lot of travel which is hampered by his medical condition.

Prior to filing his Chapter 7 petition, Ontiveros unsuccessfully attempted to cut back on his expenses in order to meet his obligations to creditors. He moved out of his apartment in order to reduce the amount of rent. However, he was unable to return his 1993 BMW 325 IS automobile because it was on a 45–month lease, and he has since reaffirmed that financial obligation. Moreover, he admits to spending $450 a month for food and $300 a month for home maintenance. He discussed with his attorney the possibility of filing a Chapter 13 petition but decided against it.

In his Chapter 7 petition, Ontiveros sought to discharge a total of $39,653.59 in unsecured debts. After an evidentiary hearing in the Bankruptcy Court, the Trustee adjusted this amount to $41,853.88. According to the Trustee's calculations,[4] after deducting reasonable living expenses, Ontiveros still earns $2,117.27 of disposable income per month.[5] This money could be used to pay his unsecured creditors 100% of the debt owed over approximately a 20–month period. Under a standard 36–month repayment plan, he could repay 100% of his unsecured debt, and still retain an excess disposable income of approximately $1,000 a month.

In the Bankruptcy Court, the Trustee argued that Ontiveros' Chapter 7 petition should be dismissed on the basis that he has sufficient disposable income to pay off his unsecured debts in full under a Chapter 13 plan.[6] The Trustee argued that allowing Ontiveros to obtain Chapter 7 relief under such

2. Part of the original $25,000 was his own debt because he had changed the credit cards into his name prior to the divorce.

3. He also engaged in psychological counseling due in part to financial stress. However, his doctor released him from such care in November or December 1995.

4. Because the debtor does not dispute these figures, the Court will accept them as correct.

5. "Disposable income" is the difference between a person's available income and reasonable expenses. 11 U.S.C. § 1325(b)(2).

6. While Chapter 7 discharges a debtor of all of his unsecured debts, Chapter 13 utilizes a structured plan to make the debtor pay at least a portion of his unsecured debts over a three year period.

circumstances would constitute a "substantial abuse" of that section. 11 U.S.C. § 707(b).

On February 27, 1996, the Bankruptcy Court denied the Trustee's motion under the "totality of the circumstances" test developed in *In re Green*, 934 F.2d 568 (4th Cir.1991), and adopted by Chief Judge Mihm in *In re Pilgrim*, 135 B.R. 314 (C.D.Ill.1992). The Bankruptcy Court reasoned:

> There was no showing the Debtor filed in bad faith. Except for a leased BMW automobile which the Debtor continues to pay for, there was no showing that he led an extravagant lifestyle or that he has incurred debt in a reckless or frivolous manner. A motivating factor in his decision to file bankruptcy was his medical condition and the impact it might have in his employment. While filing bankruptcy will not alleviate that underlying problem, filing bankruptcy would leave him with one less problem to deal with.

Implicit in the Bankruptcy Court's opinion was the requirement that regardless of a debtor's ability to pay off his debts, the Trustee must show some *additional* factor in order to establish "substantial abuse" under § 707(b). Thereafter, on March 7, 1996, the Bankruptcy Court issued an Order discharging the debtor under Chapter 7. The Trustee appeals both of these decisions to this Court.

### ANALYSIS

■ The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The question of what constitutes "substantial abuse" for purposes of 11 U.S.C. § 707(b) is a matter of law to be reviewed *de novo*. *Green*, 934 F.2d at 570; *Pilgrim*, 135 B.R. at 319. Section 707(b) of the Bankruptcy Code provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of

granting the relief requested by the debtor.

11 U.S.C. § 707(b). The statute itself provides no definition of the term "substantial abuse." Not surprisingly, courts are divided over this issue.

The circuit courts have devised three main approaches. The Eighth and Ninth Circuits hold that a debtor's ability to pay his debts, standing alone, justifies a § 707(b) dismissal. This is known as the *per se* rule. *See United States Trustee v. Harris*, 960 F.2d 74, 76–77 (8th Cir.1992); *In re Walton*, 866 F.2d 981, 984–85 (8th Cir.1989); *In re Kelly*, 841 F.2d 908, 914–15 (9th Cir.1988).

In contrast, the Fourth Circuit has explicitly rejected the idea that solvency alone is a sufficient basis for finding "substantial abuse" under Chapter 7. *Green*, 934 F.2d at 572. Instead, that court has adopted a totality of the circumstances test. *Id.* Under this test, the following five factors are to be considered along with the relation of the debtor's future income to his future necessary expenses:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id.*

■ The Sixth Circuit has adopted a hybrid approach between these two extremes. First, the court examines the ability of the debtor to repay his creditors out of future earnings. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). Like the Eight and Ninth Circuits, that factor alone may be sufficient to warrant dismissal. *Id.* However, the Sixth Circuit also analyzes other mitigating factors which may rebut the presumption of

"substantial abuse."[7] These factors include: whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be significantly reduced without depriving him of adequate food, clothing, shelter, and other necessities. *Id.* at 126–27. Such an inquiry resembles a more limited form of the totality of the circumstances test employed by the Fourth Circuit in *Green*.

Under all three tests, the primary factor to be considered is the debtor's ability to pay off his debts with his disposable earnings. The only difference is that the Sixth, Eighth, and Ninth Circuits believe that this factor alone may be dispositive of the "substantial abuse" issue, while the Fourth Circuit in *Green* requires something more. That something more appears to be bad faith. While the first three circuits believe that § 707(b) is substantially abused by those debtors who are "dishonest *or non-needy*," *Krohn*, 886 F.2d at 126 (emphasis added), the Fourth Circuit holds that the latter category is not alone enough to invoke such a dismissal. *Green*, 934 F.2d at 572.

Each side looks to legislative history in support of their respective positions. Such history, however, is sorely lacking. Section 707(b) is part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Because there were no committee reports on the final version of the Act, the Eighth and Ninth Circuits rely upon the report of an earlier draft of the Senate bill which states that § 707(b) "upholds creditors' interests in obtaining repayment where such repayment would not be a burden on the debtor ... [I]f a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983) *cited in Walton*, 866 F.2d at 983; *Kelly*, 841 F.2d at 914.

On the other hand, the Fourth Circuit relies upon the fact that "Congress considered and rejected the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors." *Green*, 934 F.2d at 571. Moreover, the legislative history behind Congress' previous enactment of § 707(a) states, "This section does not contemplate ... that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal." S.Rep. No. 95–989, 95th Cong., 2d Sess. 94. In sum, the sparse legislative history could support either side and is not dispositive of the problem.

Both sides also turn to the wording of § 707(b) as well as the language of other relevant statutes. The Sixth, Eighth, and Ninth Circuits argue that the Fourth Circuit's view, which equates "substantial abuse" with bad faith, "needlessly duplicate[s] other provisions of the Code that have always required petitioners to file in good faith." *Krohn*, 886 F.2d at 126; *Walton*, 866 F.2d at 983. Moreover, the fact that the statute does not give a "laundry list" of specific abuses suggests that the drafters did not intend a narrow interpretation of the term "substantial abuse." *Walton*, 866 F.2d at 983.

In contrast, the Fourth Circuit looks to the last sentence of § 707(b) which provides for a presumption in favor of the debtor. The court in *Green* reasoned that "[t]he establishment of a future income threshold of eligibility for Chapter 7 by means of the *per se* rule ... would render this presumption toothless." 934 F.2d at 573. In addition, the court noted that "nowhere in the [Bankruptcy] Code is there a requirement that a debtor be insolvent in order to file for bankruptcy." *Id.* at 572. In fact, 11 U.S.C. § 109 allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors or are predicated upon anticipated income. *Id.*

After giving due consideration to both sides, the Court rejects the extreme views of

---

**7.** At least one court has referred to the test espoused by the Ninth Circuit in *Kelly* as a "rebuttable presumption rule" rather than a *per se* rule.

*In re Fitzgerald*, 155 B.R. 711, 713–14 (Bankr. W.D.Tex.1993). In this sense, all three lines of authorities are not all that divergent. *Id.* at 713.

the Fourth, Eighth, and Ninth Circuits and adopts the Sixth Circuit's hybrid test set forth in *Krohn.* First, the Court rejects the Fourth Circuit's holding in *Green* that the debtor's ability to pay can never be dispositive of the "substantial abuse" issue. Equating "substantial abuse" with bad faith merely duplicates other areas of the Code. *Krohn,* 886 F.2d at 126; *Walton,* 866 F.2d at 983. Chapter 7 filings have always required a good faith basis even before the enactment of § 707(b). Thus, the "substantial abuse" provision would have no bite if it did not create an additional reason for dismissing a Chapter 7 petition. This additional reason is whether the debtor is non-needy.

■ The last sentence of § 707(b), which provides a presumption in favor of the debtor, may be *rebutted* by the fact that a debtor has the ability to repay his creditors under a Chapter 13 plan. *See In re Snow,* 185 B.R. 397, 402 (Bankr.D.Mass.1995) (holding that once the schedules indicate the debtor's ability to make substantial payments on unsecured indebtedness, the presumption is rebutted and the "playing field is now even"); *In re Fitzgerald,* 155 B.R. 711, 716 n. 7 (Bankr.W.D.Tex.1993). Finally, § 109 does not control this dispute because it is a general provision which must yield to the more specific dictates of § 707(b). *See Pilgrim,* 135 B.R. at 318.

The Court equally rejects the *per se* rule of the Eighth and Ninth Circuits because of its failure to account for possible mitigating circumstances in the debtor's ability to pay his creditors. Strict adherence to such a rule may defeat the equitable intent of the Bankruptcy Code. *See Walton,* 866 F.2d at 987 (McMillian, J., dissenting); *Snow,* 185 B.R. at 402. The Sixth Circuit in *Krohn* acknowledged the draconian nature of the *per se* rule by providing mitigating factors to consider in deciding whether a debtor is needy. 886 F.2d at 126–27. Thus, that approach appears to be the most equitable and will guide the Court's analysis here.

Ontiveros relies upon Chief Judge Mihm's holding in *Pilgrim* which ostensibly adopted the totality of the circumstances test as defined by the Fourth Circuit in *Green.* 135 B.R. at 320. However, it is far from clear whether that opinion went so far as to adopt the actual *holding* in *Green* that the debtor's ability to pay can never constitute a "substantial abuse" under § 707(b) without some additional evidence of bad faith. On the contrary, the court in *Pilgrim* stated:

> When assessing "substantial abuse" under § 707(b), the court must first consider the primary factor, the debtor's ability to pay his debts, and then *any mitigating factor which may temper this ability to pay* or any relevant factor independent of the debtor's ability to pay, such as bad faith. On a case-by-case basis, the court must assess whether this debtor is the dishonest or *non-needy* debtor whose case is intended to be dismissed under § 707(b).

*Id.* at 320–21 (emphasis added).

This analysis sounds much like the Sixth Circuit's rebuttable presumption test in *Krohn* which allows the debtor's ability to pay to be dispositive of the "substantial abuse" inquiry in the absence of any mitigating factors.[8] 886 F.2d at 126–27. In fact, the court in *Pilgrim* noted that all "four circuits, along with a clear majority of district courts, have adopted a version of the totality of the circumstances test." *Id.* at 321. The court only embraced the specific test in *Green* in order to reject the bankruptcy court's holding that a more narrow test applied, namely, the "shock the conscience standard" of *In re Keniston,* 85 B.R. 202 (Bankr.D.N.H.1988). *Pilgrim,* 135 B.R. at 321.

The court in *Pilgrim* framed its inquiry in terms of whether the debtor is "dishonest *or* non-needy," implying that either one is sufficient to show "substantial abuse" under § 707(b). In addition, the court stated earlier in its opinion that § 707(b)—

---

8. The Court sees no problem in applying the bad faith factors of *Green* as possible *aggravating* factors in its analysis. *See, e.g., In re Vianese,* 192 B.R. 61, 71 (Bankr.N.D.N.Y.1996) *quoting In re Smith,* 1995 WL 20345, at *2–3 (Bankr.D.Idaho Jan. 11, 1995) ("Where the debtor is able to pay less than 50% [of his debts] but is still able to make a substantial contribution to his creditors and there are aggravating circumstances the courts have also denied relief.").

was enacted to correct an imbalance in Bankruptcy Code policy which had allowed one side of the equation, a debtor's right to a fresh start, to outweigh the other side of the equation, the presumption, which protects creditors['] rights, that a debtor will make his best effort to meet his obligation before turning to Chapter 7 relief. Senator Hatch put this in other words on the Senate floor ... "As I mentioned earlier, title III contains more than 30 amendments to ensure that a 'fresh start' does not become a 'head start.'" Given this observation, the Court agrees that Congress intended to consider the ability to pay as one factor, if not the primary factor, relevant to the determination of whether a debtor's petition constitutes "substantial abuse" under § 707(b).

*Id.* at 317 (internal citations omitted). Moreover, unlike the court in *Green*, the court in *Pilgrim* did not see an inconsistency between § 109 and § 707(b). *Id.* at 318.

■ This Court shall employ an analysis similar to that used by Judge Mihm in *Pilgrim* and the Sixth Circuit in *Krohn*. First, the Court will consider the debtor's ability to pay as the primary, and possibly dispositive, factor. Second, a totality of the circumstances test should be employed to determine whether any mitigating factors affect the debtor's ability to pay [9] or whether any aggravating factors show his bad faith. *See also Fitzgerald*, 155 B.R. at 716–17. In evaluating these factors, the focus should not be so much on how the debt was acquired (which goes to a good faith inquiry) but rather on the debtor's ability to repay the debt now. *Id.* at 717 n. 13. Finally, the Court must determine whether the debtor is so dishonest or non-needy as to warrant dismissal under § 707(b).

■ Applying this analysis to the instant case, the Court finds that Ontiveros is a non-needy debtor whose Chapter 7 petition con-

stitutes a "substantial abuse" under § 707(b). In his petition, Ontiveros seeks to discharge a total of $41,853.88 in unsecured debts. Ontiveros has a disposable income of $2,117.27 per month which can be used to pay his creditors 100% of the debt owed over approximately a 20–month period. Under a standard 36–month repayment plan, he could repay 100% of his unsecured debt and still retain an excess disposable income of approximately $1,000 a month. This showing is more than sufficient to rebut § 707(b)'s presumption in favor of granting the relief requested by the debtor. *See In re Jarrell*, 189 B.R. 374, 378 (Bankr.M.D.N.C.1995) ("[T]he greater the amount of a debtor's disposable income, the more important the disposable income factor is in considering whether substantial abuse exists for purposes of § 707(b).").

The next step is to ask whether there are any mitigating factors which are relevant to the debtor's status as a needy recipient of Chapter 7 relief. The Bankruptcy Court noted that Ontiveros was "concerned [that] his job may be in jeopardy because of absences due to his medical problems." However, the record fails to reveal sufficient factual evidence to support the inference that his job is in fact in jeopardy. Ontiveros' employer, John Deere, allowed him to take a paid leave of absence on every occasion that he requested it. Aside from stray remarks by "colleagues and friends," there is no indication that Ontiveros will be fired for these absences. In light of fact that he has worked for the same company for the past 15 years, he must have acquired a certain degree of seniority which may help to prevent such a discharge. Moreover, in the event that Ontiveros is fired at some point in the future, nothing prevents him from filing for Chapter 7 relief at that time.[10]

---

9. In this regard, some of the factors in *Green* may come into play not to show the debtor's good faith, but to show his inability to pay off his debt. For instance, if the debtor's financial problem is caused by a sudden calamity, unemployment or illness, 934 F.2d at 572, the chances are good that he will not have a steady stream of future income to pay off his debts.

10. Moreover, as the Trustee points out, allowing Ontiveros to obtain Chapter 7 relief now would bar him from filing another such petition until September 8, 2001. 11 U.S.C. § 727(a)(8). Thus, Ontiveros would be barred from filing a Chapter 7 petition in the event that he became unemployed and actually needed such relief.

Nor do Ontiveros' uninsured medical expenses prevent him from paying off his creditors under a Chapter 13 plan. Ontiveros testified that he may spend up to $1,000 per visit for hotel and living expenses while visiting medical facilities such as the Mayo Clinic. He also spends an undisclosed amount on alternative treatments for his condition and certain uncovered medications. However, under a three year repayment plan, Ontiveros will be left with an excess disposable income of approximately $1,000 a month beyond his reasonable living expenses and money for secured debts. This excess income should be more than enough to cover such medically-related costs. In the event that his health insurance lapses, he may file for Chapter 7 bankruptcy at that time. The Court notes that Ontiveros' current Chapter 7 petition lists no medically related expenses as unsecured debts.

■ In sum, this is a situation where the debtor is presently living a comfortable lifestyle in which he earns in excess of $60,000 per year, drives a BMW automobile, and spends $450 a month for food and $300 a month for home maintenance. His divorce is long over, and he cannot claim that it has any impact on his present ability to pay his creditors. Even taking into account his medical condition, he can pay off the full amount of the $41,853.88 in unsecured debt within three years, continue to drive his BMW, and *still* have approximately $36,000 to spare for medical expenses. This is hardly the situation in which a needy debtor deserves a fresh start in life. Granting such relief here would only give the debtor a head start over his creditors and constitute a substantial abuse of the Code. *In re Scheinberg,* 134 B.R. 426, 429 (D.Kan.1992). "It is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them." *Id.* citing *In re Hudson,* 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985).

■ In dismissing Ontiveros' petition, the Court wishes to make clear that it finds no evidence of "bad faith" on the part of the

debtor. Ontiveros' financial troubles began shortly after the loss of his spouse's income in 1990 and were no doubt exacerbated by his medical condition. However, as discussed above, the "substantial abuse" inquiry is more broad than a simple bad faith analysis. It also encompasses the situation where an honest but non-needy debtor attempts to take advantage of the protections of Chapter 7 when he has the ability to live comfortably and to pay off a substantial portion of his unsecured debts.[11] *Krohn,* 886 F.2d at 126; *Walton,* 866 F.2d at 983; *Pilgrim,* 135 B.R. at 320–21; *In re Stratton,* 136 B.R. 804, 805–06 (Bankr.C.D.Ill.1991). The hybrid approach employed here best resolves the tension between the conflicting policies of granting the debtor a fresh start while thwarting the abuse of consumer credit. For the foregoing reasons, Debtor's Chapter 7 petition must be dismissed as a "substantial abuse" under § 707(b).

### *CONCLUSION*

IT IS THEREFORE ORDERED that the Orders of the Bankruptcy Court dated February 27, 1996 [Doc. # 10] and March 7, 1996 [Doc. # 11] are **VACATED.**

IT IS FURTHER ORDERED that the Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) [Doc. # 5] is **GRANTED.**

This case is **REMANDED** to the Bankruptcy Court with orders to dismiss Ontiveros' Voluntary Petition unless it is converted to a Chapter 13 Petition within twenty-one (21) days of the date of this Order.

The Order to Show Cause against Plaintiff–Appellee is resolved. The Clerk is ordered to **TERMINATE** this appeal, each party to bear their own fees and costs.

---

**11.** The Court is not prepared to say that the debtor's good faith can never play a role in the "substantial abuse" analysis. In a very close case, the good faith of the debtor may make all the difference. However, this case is far from close.