In re Anita HARSHAW and Kevin Harshaw, Debtors.

United States Trustee, Movant,

v.

Anita Harshaw and Kevin Harshaw, Respondents.

No. 04–30366 MBM.

United States Bankruptcy Court, W.D. Pennsylvania.

June 27, 2006.

Kathleen Robb, Pittsburgh, PA, for the United States Trustee.

Herbert A. Terrell, Pittsburgh, PA, for Anita and Kevin Harshaw.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

**AND NOW**, this **27th day** of **June, 2006**, upon consideration of

(a) the motion by the United States Trustee (hereafter "the Trustee") to dismiss the instant Chapter 7 bankruptcy case of Anita and Kevin Harshaw, the above-captioned debtors

(hereafter "the Debtors"), pursuant to 11 U.S.C. § 707(b), which motion the Court has already granted by Order of Court dated January 18, 2005, after a hearing that was held on January 18, 2005;

(b) the Memorandum Order entered on March 7, 2006, by the United States District Court for the Western District of Pennsylvania, Judge Conti (hereafter "the District Court"), with respect to an appeal by the Debtors of this Court's January 18, 2005 Order of Court, wherein the District Court remanded the matter before it to this Court "so that the parties may submit evidence to th[is] ... [C]ourt and for th[is] ... [C]ourt to make findings [of fact] and set forth conclusions of law;" and

(c) the parties' stipulation of facts, as well as the parties' respective proposed conclusions of law, regarding the Trustee's § 707(b) dismissal motion, each of which were submitted to this Court subsequent to the District Court's remand;

and for the reasons set forth below, **the Court enters findings of fact and conclusions of law, also set forth herein, in support of its January 18, 2005 Order of Court.**

## I.

As an initial matter, the Court makes the following observations and/or holds as follows with respect to those facts which are relevant to a disposition of the Trustee's § 707(b) dismissal motion, which observations and holdings support the Court's decision on January 18, 2005, to rule on the Trustee's § 707(b) dismissal motion without entering formal findings of fact and conclusions of law:

(a) The parties presently agree that an evidentiary hearing is unnecessary, which is another way of saying that the parties presently do not dispute those facts that are relevant to a disposition of the Trustee's § 707(b) dismissal motion;

(b) Furthermore, the parties presently stipulate as to such facts, *see* Stipulated Proposed Findings of Fact of the United States Trustee and Debtors, at ¶¶ 8—41 (hereafter "the Stipulation" and/or "Stipulation ¶ ___");

(c) Moreover, the facts which are so presently stipulated to are precisely those facts which were asserted by the Trustee both in pleadings submitted prior to, and at the hearing held on, January 18, 2005, which factual assertions were never disputed at that time by the Debtors, *see* Record of 1/18/05 Hearing (commenced @ 2:30:02 p.m.); and

(d) Consequently, an evidentiary hearing was also unnecessary as of January 18, 2005.

In light of the foregoing, the Trustee's § 707(b) dismissal motion, as of January 18, 2005, necessarily constituted a motion to be decided entirely on questions of law. Because, pursuant to Fed.R.Civ.P. 52(a), which rule is made applicable to the instant matter,[1] "[f]indings of fact and conclusions of law are unnecessary in determinations of motions decided on questions of law," *Wooten v. U.S. Department of Interior,* 56 B.R. 227, 230 (W.D.La.1985) (citing *In re Scrap Disposal, Inc.,* 15 B.R. 296,

---

**1.** Bankruptcy Rule 9014 governs, *inter alia,* a § 707(b) dismissal motion. *See* Fed. R.Bankr.P. 1017(f)(1), 11 U.S.C.A. (West 2005). Bankruptcy Rule 7052 applies to matters governed by Bankruptcy Rule 9014. *See* Fed.R.Bankr.P. 9014(c), 11 U.S.C.A. (West 2005). Bankruptcy Rule 7052 operates to make Fed.R.Civ.P. 52 applicable to a proceeding. *See* Fed.R.Bankr.P. 7052, 11 U.S.C.A. (West 2005).

297 (9th Cir. BAP 1981), for the foregoing proposition, and holding as well that written legal conclusions can be dispensed with because "[t]he district court should make an independent determination of the legal issues involved[, that is because] ... the proper standard of review of the issues of law is *de novo*"); *see also* Fed.R.Civ.P. 52(a), 28 U.S.C.A. (West 1992) (last sentence of Rule 52(a)) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in subdivision (c) of this rule," which latter subdivision is inapplicable to the instant matter); *Scrap Disposal,* 15 B.R. at 297 (interpreting Fed.R.Civ.P. 52 and holding as well that factual findings are necessary only if a motion requires a court to determine factual issues), and since, as just explained, the Trustee's § 707(b) dismissal motion, as of January 18, 2005, necessarily constituted a motion to be decided entirely on questions of law, the Court was warranted in ruling in the fashion that it did on January 18, 2005, that is in dispensing at that time with a written expression of formal factual findings and legal conclusions relevant to a dismissal of the Debtors' bankruptcy case via § 707(b).

However, the foregoing notwithstanding, because the District Court has remanded with specific instructions to this Court to enter formal findings of fact and conclusions of law,[2] the Court will do precisely that. As for findings of fact, the Court finds as fact all of those facts to which the parties have now stipulated and which are set forth at Stipulation ¶¶ 8—45. Further-more, the Court enters as conclusions of law those legal conclusions that it sets forth in the next section of the instant Memorandum Opinion.

**II.**

11 U.S.C. § 707(b) provides that:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West 2004). The Debtors concede that their "scheduled liabilities are primarily consumer debts, as defined in 11 U.S.C. § 101(8)." Stipulation ¶ 16. Thus, the only issue regarding the applicability of § 707(b) to the Debtors' circumstances is whether this Court finds that their receipt of a Chapter 7 discharge from their unsecured debts—such debts total $114,611, *see* Stipulation ¶ 16—would constitute "a substantial abuse" of the Chapter 7 bankruptcy process.

**A. *The Meaning of "Substantial Abuse" under § 707(b).***

Neither the U.S. Supreme Court nor the Third Circuit have ruled thus far as to the meaning of "substantial abuse" for purposes of § 707(b). Therefore, this Court is free, and it chooses to continue, to follow

---

**2.** This Court observes that the Debtors are, at a minimum, partly responsible for what this Court perceives to be an arguably unnecessary remand of the instant matter by the District Court given that the Debtors actually advanced as an argument before the District Court on appeal that this Court erred by ruling on January 18, 2005, without the entry of formal findings of fact and conclusions of law. By obtaining such remand the Debtors, for what now approaches nearly an additional year and a half, have essentially, this Court believes, improperly benefitted from the automatic stay of a bankruptcy case that should be dismissed.

**522**

its prior holding on the subject as set forth in *In re Duncan*, 201 B.R. 889, 893–95 (Bankr.W.D.Pa.1996).

 In *Duncan* the Court wrote as follows regarding the meaning of such "substantial abuse":

"Substantial abuse" is not defined either in § 707 or elsewhere in the Bankruptcy Code. However, the legislative history seems to make clear that § 707(b) "was added to chapter 7 in response to concerns that some debtors who could pay their creditors might resort to chapter 7 to avoid their obligations." 4 *Collier on Bankruptcy*, para. 707.04 at 707–15 (Bender 1996) (citing numerous floor statements of Congressmen at note 4); *see also* S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983), *reprinted in Norton Bankruptcy Law and Practice 2d*, 1995–96 Ed., at 711–12 (The "Senate Report accompanying § 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankruptcy Amendments Act of 1984," indicates that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a *substantial abuse*").

Largely on the basis of such legislative history, courts have uniformly held that a debtor's ability to repay his debts or, more aptly, to fund a Chapter 13 plan is, at a minimum, a factor or circumstance that is indicative of whether "substantial abuse" would result from a discharge. *See, e.g., [In re] Kelly*, 841 F.2d [908] at 913 [(9th Cir.1988)]; *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989); *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1988 [1989]); *In re Green*, 934 F.2d 568, 572 (4th Cir.1991). The only difference among the courts seems to be in the importance which they attach to a debtor's future ability to repay its dischargeable debts. *Id.* However, this Court

agrees with the court in *In re Vesnesky*, 115 B.R. 843 (Bankr.W.D.Pa.1990), that "[a]ny difference between the courts seems to be a question of degree." *Id.* at 848; *see also In re Ontiveros*, 198 B.R. 284, 288 note 7 (C.D.Ill.1996) ("all three lines of authorities are not all that divergent").

The Eighth and Ninth Circuits have held that a finding that a debtor is able to repay his debts in the future, without more, is sufficient to dismiss that debtor's Chapter 7 case. *Kelly*, 841 F.2d at 913; *Walton*, 866 F.2d at 985. The Fourth Circuit has held that a debtor's future ability to repay his debts is but one of perhaps six or more factors that must be considered in addressing the substantial abuse issue, and that none of these factors by themselves may be dispositive of such issue. *Green*, 934 F.2d at 572. The other factors to be considered in what has been described as the "totality of the circumstances" test include:

(1) Whether the [debtor's] bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment [on his part];

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition [of the debtor]; and

(5) Whether the [debtor's] petition was filed in good faith.

*Id.*

The Sixth Circuit has held that "[s]ubstantial abuse can be predicated upon

either [a] lack of honesty [by the debtor] or [a debtor's] want of need [for a Chapter 7 discharge]," *Krohn*, 886 F.2d at 126, and that these two benchmarks necessitate a consideration of, *inter alia*, all of the factors listed by the Fourth Circuit in *Green*. *Id.* at 126–27. In particular, the Sixth Circuit grouped factors for consideration as follows:

> [F]actors that may be relevant to ascertaining a debtor's honesty ... [include] the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in 'eve of bankruptcy purchases,' and whether he was forced into Chapter 7 by unforeseen or catastrophic events. Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings.... Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.* The difference between the approach of the Sixth Circuit and that of the Fourth Circuit, however, is that a finding that a debtor is not in need of a Chapter 7 discharge (i.e., that a debtor has the ability to repay his debts out of his future income), by itself, may be sufficient to warrant a dismissal. *Id.* at 126. Likewise, a finding that the debtor has displayed a lack of honesty also may, by itself, result in a dismissal of that debtor's case. *Id.* The Sixth Circuit's approach thus represents a much more limited version of the "totality of the circumstances" approach, *Ontiveros*, 198 B.R. at 288, and has been referred to by other courts and various commentators as a "hybrid" approach that carves out a position somewhere between the extremes of the Eighth and Ninth Circuits, on the one hand, and the Fourth Circuit, on the other. *Id.* at 288–89. Courts in the Seventh and Tenth Circuits have also recently dealt with the issue of "substantial abuse" under § 707(b). *See, e.g., Ontiveros*, 198 B.R. at 289 (adopting the Sixth Circuit's "hybrid" approach); *In re Higuera*, 199 B.R. 196, 198–201 (Bankr.W.D.Okla. 1996) (adopting the Fourth Circuit's "totality of the circumstances" approach).

This Court finds that the Sixth Circuit's "hybrid" approach is the most reflective of congressional intent as evidenced by the legislative history, and that it is also more equitable than the other two approaches. *See also Ontiveros*, 198 B.R. at 291 ("The hybrid approach ... best resolves the tension between the conflicting policies of granting the debtor a fresh start while thwarting the abuse of consumer credit."). *Therefore, this Court adopts the "hybrid" approach set forth in Krohn*. The Court also views its adoption of the "hybrid" approach as consistent with the test set forth in *Vesnesky*, a decision also decided by a bankruptcy court in the Western District of Pennsylvania, wherein that court indicated that "[e]ven though the ability to pay [in the future] is the critical question, the court may use its discretion to recognize unique hardship." *Vesnesky*, 115 B.R. at 848 (the *Vesnesky* court equates recognition of such hardship with the Fourth and Sixth Circuits' consideration of certain of the numerous additional factors that they list).

*Duncan,* 201 B.R. at 893–95 (emphasis added). Because this Court adopts the hybrid approach set forth in *Krohn* when assessing whether substantial abuse is present, that a debtor is not in need of a Chapter 7 discharge (i.e., that a debtor has the ability to repay his or her debts out of his or her future income), by itself, may, consistent with *Krohn,* be sufficient to warrant a dismissal. Extending the foregoing holding, the lack of a need by a debtor for a Chapter 7 discharge will almost certainly suffice to warrant a dismissal if either (a) such debtor also lacks some unique hardship, or (b) the lack of such need by such debtor is pronounced, that is if such debtor has a considerable ability to repay some portion of his or her debts.

### B. Application of the Hybrid Approach to the Instant Case.

■ For the reasons set forth below, the Court holds that (a) the Debtors lack the need for a Chapter 7 discharge, (b) such lack of need on their part is pronounced, and (c) they also lack some unique hardship.

■ The Court holds that the following factors, by themselves, establish that the Debtors lack the need for a Chapter 7 discharge, and that such lack of need is pronounced:

(a) The Debtors have the ability to contribute at least $1,439.61 per month to the satisfaction of their unsecured indebtedness given that they have at least a like surplus of monthly income over monthly expenses, *see* Stipulation ¶ 38;

(b) The Debtors are eligible for adjustment of their debts through Chapter 13 of the Bankruptcy Code given that their unsecured debts total $114,611, *see* Stipulation ¶ 16, and their secured debts, according to the Debtors' Bankruptcy Schedule D, total $526,224,[3] *see* 11 U.S.C.A. § 109(e) (West 2005) (individuals are eligible for Chapter 13 relief if they owe, as of the petition filing date, unsecured debts of less than $307,675 and secured debts of less than $922,975);

(c) The Debtors could repay through the Chapter 13 process (i) at least $51,825.96, or 45.2%, of their unsecured debts over 36 months, *see* Stipulation ¶ 39, or (ii) at least $86,376.60, or 75.4%, of their unsecured debts over 60 months, *see* Stipulation ¶ 40; and

(d) The Debtors enjoy a stable source of future income, as reflected by the fact that (i) their joint gross income from employment for each of the years 2001, 2002, and 2003 ranged between $155,157 and $168,349, *see* Stipulation ¶ 13, (ii) their joint gross monthly salaries from employment in 2004—i.e., at the time of the commencement of the instant case—equalled $15,207, which equates to $182,484 on an annual basis, *see* Stipulation ¶ 12, and (iii) Mrs. Harshaw is employed as a physician by Allegheny Medical Practice, by whom she has been employed for 15 years, *see* Stipulation ¶ 10.

In holding as the Court does, the Court rejects as nonsensical, if not downright outrageous, the Debtors' position that the Court cannot, when conducting a § 707(b) substantial abuse analysis, consider, for purposes of assessing future ability to repay debts, those savings that the Debtors have realized from their own post-petition reductions in monthly expenditures, which savings appear to equal $1,300.61 on a monthly basis, *see* Stipulation ¶¶ 25—28 &

---

**3.** The Court can and does take judicial notice of the Debtors' bankruptcy schedules.

37 (i.e., reduction in monthly vehicle and automobile insurance expense; reduction in monthly unreimbursed job travel expense occurred as the result of a correction of an overstatement by the Debtors in their Schedule J rather than some post-petition action on their part). The Court rejects such position of the Debtors because, had the Debtors post-petition not undertaken themselves to reduce such monthly expenditures (i.e., the cost of a fifth household vehicle and the corresponding insurance), then the Court, for purposes of a § 707(b) analysis, would have been legally compelled to reduce, and thus would have reduced, as excessive and unreasonable such monthly expenditures. *See Duncan*, 201 B.R. at 894–96 (such reduction in monthly expenditures is called for not only in an application of the hybrid approach set forth in *Krohn* but also when applying the more lenient (from a debtor's perspective) totality of the circumstances approach set forth in *Green*). Because uniform case authorities establish that the Court can consider, for purposes of a § 707(b) analysis, savings that the Debtors would realize from such hypothetical cost reductions by the Court, the Debtors cannot succeed in immunizing such cost reductions from a § 707(b) analysis by simply undertaking to accomplish such reductions

themselves post-petition; consequently, instead of shielding such cost reductions from a § 707(b) analysis, what such cost reductions by the Debtors serve to accomplish, from a § 707(b) perspective, is to irrebuttably establish that such costs were unreasonable or excessive in the first place. Indeed, were the law otherwise, that is as the Debtors would wish, then a bankruptcy debtor could easily subvert § 707(b) and proceed to substantially abuse the Chapter 7 process. What's more, that the Court can, indeed is legally required to, undertake and then consider the results of such hypothetical cost reduction when conducting a § 707(b) analysis operates to render untenable the Debtors' companion argument that (a) they did not possess, at the time of their Chapter 7 petition filing, any meaningful sum of disposable income to pay creditors, (b) the filing of such bankruptcy petition should thus automatically be viewed as having been filed in good faith, and (c) presumably their bankruptcy case should thus automatically be viewed as one that does not substantially abuse the Chapter 7 process.[4]

Furthermore, the Court holds that certain of the Debtors' expenses which have

4. The Court presumes that, when the Debtors argue that the filing of their bankruptcy petition should automatically be viewed as having been filed in good faith, they likewise argue that their bankruptcy case should also automatically be viewed as one that does not substantially abuse the Chapter 7 process, because the Debtors appear to view as synonymous (a) a motion to dismiss a Chapter 7 case for cause on the basis of a bad faith bankruptcy petition filing, and (b) a motion to dismiss a Chapter 7 case on the ground that it is substantially abusive of the Chapter 7 process. Unfortunately for the Debtors, the former of the two aforesaid motions, which can only be brought under 11 U.S.C. § 707(a), is anything but synonymous with the latter of such two motions, which is brought exclusively under

§ 707(b) and is, at the most, only marginally concerned with the good faith of a debtor (i.e., such good faith can constitute one of many factors to be considered vis-a-vis substantial abuse). The Court can only surmise that the Debtors view such motions as synonymous, that is that the Debtors essentially confuse the two, because (a) the Debtors, in all of their responses to pleadings and memoranda of the Trustee, repeatedly cite to the decisions in *In re Zick*, 931 F.2d 1124 (6th Cir.1991), and *In re Marks*, 174 B.R. 37 (E.D.Pa.1994), which two cases deal only with § 707(a) and not with § 707(b), and (b) neither the decisions in *Zick* or *Marks* nor § 707(a) otherwise bear any relevance to the Trustee's § 707(b) motion.

not yet been reduced could be reduced, and significantly, without depriving them and their lone 13–year–old daughter of adequate food, clothing, shelter and other necessities. In particular, the Debtors indicate, in their Bankruptcy Schedule J, that they pay $1,436 per month on their home mortgage (also the subject of Stipulation ¶ 23), $248 per month for electricity and heating fuel, and $400 per month for home maintenance (also the subject of Stipulation ¶ 33), all of which totals $2,084 per month. The Court holds that, for a family of three in the Pittsburgh area, significantly less—perhaps as much as $1,000 less—than $2,084 could be spent on a monthly basis for adequate shelter. As well, the Debtors own four vehicles, and that is after having relieved themselves of one additional vehicle subsequent to their bankruptcy petition filing. *See* Stipulation ¶ 25. However, only two members of the Debtors' household are able to drive. Therefore, the Court finds to be extravagant, entirely unnecessary, and ripe for adjustment (when ascertaining the Debtors' need for a Chapter 7 discharge) the Debtors' monthly vehicle expense of $1,704.39, *see* Stipulation ¶ 27; once again, the Court suspects that a reduction of as much as $1,000 per month with respect to such vehicle expense is called for. Finally, the Court summarily concludes that the Debtors' monthly expenditures of $472 for clothing, *see* Stipulation ¶ 34, and $250 for recreation and entertainment, *see* Stipulation ¶ 35, may be cut significantly without resulting in any relevant deprivation to either the Debtors or their daughter; between the two monthly expenditures, the

Court envisions monthly cutbacks totalling at least $300. The foregoing potential for cuts in monthly expenditures by the Debtors—the Court finds such potential to equal as much as $2,300 per month in aggregate cuts (i.e., $1,000 + $1,000 + $300)—further establishes that the Debtors lack the need for a Chapter 7 discharge, and makes more pronounced such lack of need.

■ Finally, Mrs. Harshaw has $525 deducted from her monthly gross income that is then contributed on her behalf to a "403B" retirement plan, *see* Stipulation ¶ 30, which pension contribution by her is voluntary, *see* Stipulation ¶ 31. The Trustee contends, and the Court holds as well, that the entirety of such contribution represents—not only for the purpose of a Chapter 13 analysis but also for the purpose of determining whether a Chapter 7 case should be dismissed as substantially abusive under § 707(b)—disposable income that must be used by the Debtors to repay their creditors. The Debtors disagree and argue in opposition that (a) the Trustee relies for support primarily on the Third Circuit's decision in *In re Anes*, 195 F.3d 177 (3rd Cir.1999), wherein the Third Circuit held, within the context of confirmation of a Chapter 13 plan, that "[v]oluntary contributions to retirement plans ... are not reasonably necessary for a debtor's maintenance or support," *Anes*, 195 F.3d at 180–81, and (b) *Anes* is entirely distinguishable from, and thus irrelevant to, the Trustee's instant § 707(b) dismissal motion on the ground that such latter motion is brought within the context of a Chapter 7 rather than a Chapter 13 case.[5] Unfortu-

5. The Debtors also feebly attempt to distinguish *Anes* from the instant matter on the ground that *Anes* "concerned the propriety of repayment of funds borrowed from a qualified 401(k) plan and not[, as in the instant matter,] monthly contributions [to a similar type of plan]." *See* Debtors' Proposed Con-

clusions of Law, at p. 11. Unfortunately for the Debtors, the Third Circuit in *Anes* held, in particular, that, "[i]n effect, the payments[, that is the repayment of such borrowed funds,] are contributions to the Debtors' retirement accounts." *Anes*, 195 F.3d at 180–181. Therefore, *Anes* is not distinguishable

nately for the Debtors, ample case authority, which case authority this Court agrees with, exists for the proposition that—*specifically for the purpose of determining whether a Chapter 7 case should be dismissed as substantially abusive under § 707(b)*—voluntary retirement plan contributions are not reasonably necessary for a debtor's maintenance or support, that is that such contributions constitute disposable income that must be used by a debtor to repay his or her creditors. *See, e.g., In re Behlke*, 358 F.3d 429, 435–36 (6th Cir. 2004) (citing several cases). What's more, the Third Circuit's decision in *Anes* is cited by other courts (a) for the immediately preceding proposition, that is that voluntary retirement contributions are to be considered as disposable income to be used to repay creditors for § 707(b) purposes, *see, e.g., Id.*, and (b) as being supportive of a *per se* rule that voluntary retirement contributions are never to be considered as reasonably necessary expenses of a debtor, that is that they are always to be considered as disposable income of a debtor that can be used to repay creditors. *See In re Robbins*, 333 B.R. 575, 578 & n. 12 (Bankr. D.Mass.2005) (pointing out that the Third

Circuit adopts such *per se* rule in *Anes*); *In re King*, 308 B.R. 522, 530 & n. 11 (Bankr.D.Kan.2004) (same). This Court (a) agrees that *Anes* operates to establish such a *per se* rule within the § 707(b) dismissal context,[6] and (b) is consequently bound to hold that, *per se*, the Debtors' $525 monthly pension contribution must be considered, for purposes of the Trustee's § 707(b) dismissal motion, as disposable income that must be used by the Debtors to repay their creditors.[7] However, even if the Court were free to engage in a "facts and circumstances" analysis regarding whether the Debtors' $525 monthly pension contribution constitutes a reasonably necessary expenditure (i.e., an amount not to be considered as disposable income to be used to repay creditors), the Court would nevertheless hold that such expenditure is not so reasonably necessary, that is that such expenditure must be considered as such disposable income. The Court so holds because (a) such contribution by Mrs. Harshaw is voluntary, (b) the Debtors are each only in their mid-forties, *see* Stipulation ¶ 8, and (c) the Debtors have already amassed a $65,027.60 retirement account balance, *see* Stipulation ¶ 32.[8] Of

---

from the instant matter on such ground advanced by the Debtors, that is *Anes* effectively concerned, as does the instant matter, a monthly contribution by debtors to a retirement plan.

**6.** The Debtors, at page 12 of their Proposed Conclusions of Law, appear to argue that the Third Circuit eschews a *per se* rule when considering whether voluntary retirement contributions are to be viewed as disposable income of a debtor that must be used to repay creditors. To the extent that the Debtors so argue, they are, given this and other courts' interpretation of *Anes*, sorely mistaken.

**7.** The Court rejects outright the Debtors' ridiculous suggestion that the decisional holding of *Anes* may have been overruled by either (a) the U.S. Supreme Court's recent decision in *Yates v. Hendon*, 541 U.S. 1, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004), or (b) the Third

Circuit's own decision in *Leckey v. Stefano*, 263 F.3d 267 (3rd Cir.2001).

**8.** The Court recognizes that the Debtors cite to *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), for the proposition that "the corpus of Mrs. Harshaw['s] monthly contributions are not includable as accessible wealth." Unfortunately for the Debtors, that the corpus of such contributions—i.e., the $65,027.60 retirement account balance—is apparently not accessible in bankruptcy by the Chapter 7 trustee assigned to the instant case is irrelevant to the issue at hand, that is whether future monthly contributions by Mrs. Harshaw to her retirement account must be considered as an amount that can be used to repay creditors for purposes of the Trustee's § 707(b) motion.

course, because such $525 monthly amount must be considered as an amount that can be used to repay creditors for purposes of the Trustee's § 707(b) motion, such availability of such amount further establishes that the Debtors lack the need for a Chapter 7 discharge, and makes more pronounced such lack of need.

Combining the Debtors' stipulated monthly surplus of $1,439.61—which surplus by itself is, as explained above, sufficient for the Court to rule that the Debtors lack the need for a Chapter 7 discharge, and that such lack of need is pronounced—with the $2,300 of additional monthly savings on expenditures, as set forth above, and the $525 additional disposable income that is presently contributed by Mrs. Harshaw to her retirement plan, the Debtors actually have a monthly surplus of $4,264.61 from which to satisfy some portion of their unsecured indebtedness. As it turns out, given such surplus, the Debtors could repay through the Chapter 13 process (a) a whopping $153,525.96, or 134% of their unsecured debts, that is all of their unsecured indebtedness and more, over just 36 months, or (b) an even more exorbitant $255,876.60, or 223.3% of their unsecured debts over 60 months. In light of all of the foregoing, the Court holds that the Debtors' lack of a need for a Chapter 7 discharge is so pronounced that, when applying the hybrid approach set forth in *Krohn,* it matters not even whether the Debtors are also experiencing some sort of unique hardship—regardless of the presence of such hardship, granting Chapter 7 relief to the Debtors would constitute a substantial abuse of the Chapter 7 process.[9]

Having so held, the Court also holds that, in any event, the Debtors cannot point to any sort of unique hardship that could serve to overcome their overwhelming ability to satisfy a significant portion of their unsecured indebtedness in the relatively near future. First, the Debtors do not even argue that their Chapter 7 petition filing was prompted by some sudden illness, calamity, or disability that was suffered by either themselves or their minor daughter. Second, the Court holds that, even if Mr. Harshaw experienced extended periods of unemployment and fluctuating income pre-petition as is argued by the Debtors, such circumstance nevertheless should not have prompted a Chapter 7 petition filing given, as the Court holds above, the (a) stability of the Debtors' overall household income, and (b) overwhelming ability of the Debtors, as a household unit, to satisfy in the relatively near future their pre-petition indebtedness. Third, the Court questions whether, in fact doubts that, the level of the Debtors' pre-petition expenditures is such that it could, as the Debtors contend, be classified as having been far in excess of their ability to repay, particularly given, as the Court holds above, the aforementioned ability of the Debtors to henceforth pay for

9. The Court sees fit to devote nothing more than the instant scant footnote to the argument pressed by the Debtors (at page 9 of their Proposed Conclusions of Law and orally at the January 18, 2005 hearing), which argument the Court views as only having been advanced halfheartedly, that, because they filed their bankruptcy petition in Chapter 7 rather than under Chapter 13, and since their future earnings thus could not constitute any part of their bankruptcy estate were they permitted to proceed under Chapter 7, such future earnings consequently cannot be considered when determining whether their bankruptcy case is substantially abusive of the Chapter 7 process. Quite simply, that future earnings cannot constitute any part of a Chapter 7 bankruptcy estate is irrelevant to the issue of what can be considered by a court when passing upon whether a bankruptcy case can even be permitted to proceed under Chapter 7 in the first place.

most, if not all, of such expenditures. Finally, that the level of the Debtors' prepetition indebtedness may be double that of the level of their assets—one of the Debtors' hallmark observations—says nothing about their ability, or any hardship that they might experience when trying, to repay such indebtedness. Therefore, unique hardship suffered by the Debtors and/or their dependent is simply nonexistent.

In fact, the only factors set forth in any of the cases that deal with § 707(b) dismissal motions that, when applied to the Debtors' cause, might point in their favor are that (a) the Debtors exhibited good faith and candor in filing schedules and other documents, that is such schedules and documents reasonably and accurately reflect the Debtors' true financial condition, and (b) the Debtors refrained from engaging in any "eve of bankruptcy purchases." However, and unfortunately for the Debtors, the presence of such factors are far from sufficient to tip the scale in favor of the Debtors under either (a) the hybrid approach set forth in *Krohn*, which test is that which is adopted by this Court, or, for that matter, even (b) the most lenient of tests as far as debtors are concerned, that is the "totality of the circumstances" test set forth in *Green*. Indeed, one of the relevant factors reflective of the Debtors' honesty and integrity that the Debtors contend must be placed under their column when assessing whether substantial abuse exists is whether they filed their bankruptcy petition in good faith. Unfortunately for the Debtors, the Court is anything but certain that even this factor belongs under their column given that the Debtors' filing of such petition in Chapter 7 is, as the Court holds, substantially abusive of the Chapter 7 process.

Therefore, and for all of the many reasons set forth above, the Court holds that to grant Chapter 7 relief to the Debtors would constitute a substantial abuse of the Chapter 7 process. Accordingly, a granting of the Trustee's motion to dismiss the Debtors' bankruptcy case pursuant to § 707(b) is, as it also was on January 18, 2005, warranted.

### ORDER OF COURT

AND NOW, this **27th day** of **June, 2006,** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the Bankruptcy Clerk shall transmit the accompanying Memorandum Opinion of the same date to the United States District Court for the Western District of Pennsylvania, Judge Conti, which opinion contains those findings of fact and conclusions of law now entered by this Court in support of its earlier Order of Court dated January 18, 2005.